[Civ. No. 45018. Second Dist., Div. Three. Dec. 31, 1974.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
RANDALL JAMES COURIE, Real Party in Interest.

## COUNSEL

Joseph P. Busch, District Attorney, Arnold T. Guminski and Philip J. McCarthy, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Gerald H. Murray for Real Party in Interest.

## OPINION

**COBEY, J.**—We have before us in this extraordinary writ proceeding the question of whether respondent superior court erred in suppressing certain contraband which the People intended to use in a criminal prosecution. The suppression order was entered upon motion of the real party in interest, defendant Randall James Courie, who was charged in a multi-count information with possession of marijuana (Health & Saf. Code, § 11357), possession of marijuana for the purpose of sale (Health & Saf. Code, § 11359, subd. (a)) and transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)). The order suppresses as evidence three-and-a-half "kilos" of marijuana which were discovered by the police in the trunk of defendant's car. The People seek a writ of mandate directing respondent court to annul the suppression order and to enter instead an order denying defendant's motion. Since the prosecution still is pending, the petition for the writ lies. (Pen. Code, § 1538.5, subds. (j), (o).)

FACTS

On March 21, 1974, around 2 a.m., Deputy Sheriffs Charles Kemerer and Edward Baker observed a car being driven by defendant on Foothill Boulevard. Their attention was drawn to the car by the erratic manner in which defendant was driving it. The car weaved from side to side in its lane, and on three or four occasions it crossed the lane divider. The officers followed defendant, stopped him, approached his car, and asked to see his driver's license and vehicle registration. Defendant complied with their request.

At about this time, Deputy Kemerer detected the odor of burnt marijuana coming from inside of defendant's car,[1] and ordered defendant to get out of the car. Defendant did so and walked around the car to the sidewalk. Defendant's gait was noticeably unsteady. The officers next asked defendant to take two field sobriety tests.[2] Defendant agreed to take them. Defendant succeeded, with difficulty, in passing a test which required him to walk heel to toe. But defendant failed the other test, which required him to stand on one leg at a time. Deputy Baker then shined a flashlight into defendant's eyes. Defendant's pupils were slow to react, which indicated to Baker that defendant probably was under the influence of alcohol or drugs. Both Kemerer and Baker detected the odor of burnt marijuana coming from defendant's clothing, and Baker smelled beer on defendant's breath. The officers concluded that defendant had been driving under the influence of marijuana (Veh. Code, § 23105) and had illegally used marijuana (Health & Saf. Code, § 11550). They placed him under arrest.

Deputy Kemerer then entered defendant's car to search for marijuana. Kemerer first examined the ash tray[3] and discovered there a partially smoked, hand-rolled cigarette, which was slightly warm to the touch and moist at one end. This cigarette contained marijuana. Next, Deputy Kemerer opened a glove compartment located in the console between the front bucket seats. There he discovered a clear plastic bag and a metal cigar tube, both of which contained marijuana. Finally, Kemerer removed the keys from the ignition and opened the trunk of the car.

---

[1] Deputy Kemerer was trained to identify the odor of burnt marijuana and had done so on numerous occasions, as had Deputy Baker.

[2] In addition to the tests described in the text, Deputy Baker asked defendant to recite the alphabet. Defendant was able to do this, though he recited very slowly.

[3] There was no testimony as to whether the ash tray was open or closed. The trial court stated, however, that it would have to assume that the ash tray was open in the absence of contrary evidence.

Inside he discovered several brown paper bags, which contained a total of three-and-a-half bricks ("kilos") of marijuana.

Defendant moved under Penal Code section 1538.5 to suppress as evidence all of the items seized during the above-described search. The trial court denied defendant's motion as to the first three items seized—the cigarette, the clear plastic bag, and the metal cigar tube.[4] The court granted defendant's motion, however, as to the three-and-a-half "kilos" of marijuana discovered in his trunk. The court stated: "I don't see that the testimony leads me into the trunk of [defendant's] car with any specific articulable facts that the officers [testified to] that gave them the right to [search] it in the field." The People contend in their petition that this ruling of the trial court is legally incorrect.

## QUESTIONS PRESENTED

1. Did the officers have probable cause to search the trunk of defendant's car?[5]

[4]Defendant does not contest this ruling by the trial court, which clearly was correct. (See *People* v. *Gregg,* 43 Cal.App.3d 137, 142 [117 Cal.Rptr. 496].)

[5]The People concede that by unlocking and opening the trunk, Deputy Kemerer "searched" it within the meaning of the Fourth Amendment. We believe this concession is a necessary one because we believe that a separate and distinct intrusion of defendant's privacy occurred when the trunk was unlocked and opened—an intrusion, moreover, into the area of the car in which defendant probably had the greatest reasonable expectation of privacy. Thus, we agree with the recent decision of the Fifth District in *People* v. *Gregg, supra,* insofar as the court there held that the police were entitled to open the trunk only if they had probable cause to believe that it contained contraband. We also believe that the trunk of defendant's car clearly was beyond the permissible scope of a search incident to defendant's arrest. (*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; *People* v. *Gale,* 9 Cal.3d 788, 794 [108 Cal.Rptr. 852, 511 P.2d 1204]; *People* v. *Koehn,* 25 Cal.App.3d 799, 804-805 [102 Cal.Rptr. 102]; see also *People* v. *Superior Court (Kiefer)* 3 Cal.3d 807, 813, fn. 2 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) For this reason, the People's reliance on *People* v. *Jackson,* 241 Cal.App.2d 189, 193 [50 Cal.Rptr. 437]—a pre-*Chimel* decision which upheld a search of an automobile trunk on facts similar to those present here—appears to us to be misplaced. The *Jackson* court relied on the search-incident-to-arrest rationale to uphold the search, and that rationale is no longer available. The limitation in the reasonable scope of a search incident to an arrest established by *Chimel*—which involved an overly broad search of a house incident to a valid arrest—has since been extended to searches of automobiles incident to an arrest. (See *People* v. *Koehn, supra,* 25 Cal.App.3d 799, 804-805.) Nothing in *People* v. *Freeny,* 37 Cal.App.3d 20, 28-29 [112 Cal.Rptr. 33], cited by the People, suggests a contrary conclusion. All that *Freeny* holds is that the *Chimel* limitation is inapplicable to automobile searches *based on probable cause. Freeny* by no means holds that automobile searches are a general exception to *Chimel,* so that an entire automobile may be searched *without* probable cause where the *only* justification for the search is that an arrest has occurred.

2. Were the officers required to obtain a search warrant before doing so?

DISCUSSION

*Probable Cause.*

■ Probable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched. (*Carroll* v. *United States* (1925) 267 U.S. 132, 162 [69 L.Ed. 543, 555, 45 S.Ct. 280, 39 A.L.R. 790]; *People* v. *Hill,* 12 Cal.3d 731, 747-748 [117 Cal.Rptr. 393, 528 P.2d 1]; *People* v. *Dumas,* 9 Cal.3d 871, 875 [109 Cal.Rptr. 304, 512 P.2d 1208].) ■ Where, as here, the search has been conducted without benefit of a search warrant, the burden is on the People to show that the requisite probable cause existed at the time of the search. (See *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].)

■ In the instant case, Deputy Kemerer was aware of two basic facts as of the time that he unlocked and opened the trunk of defendant's car: (a) defendant had been smoking a marijuana cigarette in the passenger portion of the automobile; and (b) defendant had hidden a plastic bag containing approximately two ounces of marijuana, and a metal cigar tube containing approximately half an ounce of marijuana, inside of the glove compartment of the vehicle. For reasons hereafter stated, we are satisfied that knowledge of these two facts would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that additional marijuana was hidden elsewhere in defendant's car—including, among other places, the trunk. Accordingly, we conclude that Deputy Kemerer had probable cause to search the trunk and that the People have met their burden of justification.

In so holding, we are conscious of the fact that there is very little authority on the precise question before us. Appellate decisions usually refer in general terms to a search of "the automobile" where it is reasonably suspected that "the automobile" contains contraband. (E.g., *People* v. *Freeny, supra,* 37 Cal.App.3d at pp. 28-29.) The specific problem presented by the intrusion into the trunk has seldom been squarely addressed—though in some instances the trunk has in fact been entered and the search has been upheld. (E.g., *People* v. *Dumas, supra,* 9 Cal.3d at pp. 875, 885; *People* v. *Laursen,* 8 Cal.3d 192, 197, 201-202 [104

Cal.Rptr. 425, 501 P.2d 1145]; *People* v. *Balassy,* 30 Cal.App.3d 614, 622 [106 Cal.Rptr. 461]; *People* v. *Stafford,* 29 Cal.App.3d 940, 946-948 [106 Cal.Rptr. 72].)

Quite recently, however, the Fifth District of this statewide court did address the problem before us, albeit, as we shall see, under circumstances distinguishable from those present here. In *People* v. *Gregg, supra,* that court held that the observation of a few seeds of marijuana and marijuana debris inside the passenger part of a vehicle, coupled with the odor of burnt marijuana emanating therefrom, did not furnish probable cause to search the trunk of the vehicle. There, as here, police officers stopped a car for a Vehicle Code violation (speeding), and detected the odor of burnt marijuana as they approached the car. There, as here, the officers discovered contraband in the passenger part of the car and thereupon removed the keys from the ignition, opened the trunk, and discovered a much larger quantity (six pounds) of marijuana inside. Unlike the present case, however, the officers discovered only an extremely small amount of marijuana during their search of the passenger part of the car—approximately 10 marijuana seeds on the front passenger seat, and some marijuana debris in the pocket of a jacket on the rear seat.

Our case is therefore distinguishable from *Gregg.* Here the quantity of contraband found inside the passenger part of the automobile was substantial. Furthermore, much of that which was found was in a location *hidden* from the view of those outside or inside the vehicle— namely, the glove compartment. From both of these circumstances, the deputies could reasonably have inferred that there might well be more contraband in substantial quantities hidden elsewhere in the vehicle. The first logical place to look for hidden contraband in substantial amount obviously was the trunk.

As the *Gregg* court essentially observed, each search and seizure case must be decided on its own particular facts. (*Gregg, supra,* 43 Cal.App.3d 137, 143.) Moreover, the scope of an automobile search, like any other search, must be strictly tied to and justified by the circumstances occasioning it. (See *Terry* v. *Ohio* (1968) 392 U.S. 1, 19 [20 L.Ed.2d 889, 904, 88 S.Ct. 1868].) Our position simply is that the circumstances of this case clearly justified the officers in extending their search of the automobile from the relatively open part of the vehicle to its largest closed portion—the trunk.

Support for our position can be found in a very recent decision by our Supreme Court—*People* v. *Hill,* 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1]. There, one Charles Hill led police officers on a high-speed chase after one of them had attempted to stop him for a minor traffic offense. The officers eventually halted the car, validly arrested Hill and his passenger on suspicion of armed robbery, and entered the car with probable cause to search it for contraband. Inside the passenger compartment they discovered three hand-rolled cigarettes containing marijuana.[6] The officers thereupon arrested Hill and his passenger for possession of marijuana and impounded the vehicle. The following day the officers went to a garage where Hill's car was being held and conducted an exhaustive search of the car for evidence linking Hill to a murder which was under investigation. The search proved successful. Our Supreme Court in holding the post-impound search valid explained: "[H]aving discovered marijuana during this limited search of the passenger compartment, the officers had reason to believe that additional marijuana might be secreted within the vehicle. Thus, at the time the automobile was searched at the garage there was probable cause to believe it contained contraband. . . .

". . . Whatever their primary motivations the police were authorized to conduct an *intensive* warrantless search of the *entire automobile* for evidence related to the marijuana charges." (*Id.* at pp. 751-752.) (Italics added.)

The result reached in the instant case would appear to follow a fortiori from this statement by our Supreme Court. Here, the officers discovered a full two-and-a-half ounces of marijuana hidden in the glove compartment, and the search they conducted was far less than an "intensive" search of the "entire automobile." Defendant maintains, however, that the above-quoted statement must be understood in light of Hill's desperate flight attempting to avoid capture. That circumstance, defendant insists, gave the officers there reasonable grounds to suspect that a much larger quantity of contraband must be hidden elsewhere in the car, whereas in the instant case, no such effort to avoid capture was made. We believe, nevertheless, that even if defendant's interpretation of *Hill* be correct, the substantial quantity of marijuana found inside the passenger portion of the car in the instant case justified, *at a minimum,* a

---

[6]One of the officers also observed a cellophane-wrapped package on the rear seat during a brief visual examination of the interior which the officer made from outside the car. The officer reasonably believed that this package contained marijuana, but it was determined after the search that the package did not contain marijuana. (*Id.* at pp. 741-742, 748, fn. 16.)

low-intensity search of other areas of the car in which contraband obviously could be secreted, such as the trunk compartment.

*The Warrant Requirement.*

█ We next consider whether the officers were required to obtain a search warrant before they opened the trunk of defendant's car. We hold that they were not required to do so because they inadvertently came upon defendant's car on the open road, and they thereafter acquired probable cause to believe that the trunk of the car contained contraband. (See *Cady* v. *Dombrowski* (1973) 413 U.S. 433, 439 [37 L.Ed.2d 706, 713-714, 93 S.Ct. 2523]; *Chambers* v. *Maroney* (1970) 399 U.S. 42, 52 [26 L.Ed.2d 419, 428, 90 S.Ct. 1975]; *Carroll* v. *United States, supra; People* v. *Hill, supra,* 12 Cal.3d at p. 751; *People* v. *Dumas, supra,* 9 Cal.3d at pp. 882, 884-885; *People* v. *Gale, supra,* 9 Cal.3d at p. 794.)

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to annul its order of September 4, 1974, granting defendant's motion to suppress evidence in this case and to enter instead an order denying the motion to suppress.

Ford, P. J., and Potter, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied February 26, 1975.