[L.A. No. 30458. In Bank. Mar. 19, 1976.]

STEVEN BRIAN WIMBERLY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO
COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

558

**COUNSEL**

Keith C. Monroe for Petitioners.

Gerald H. Murray as Amicus Curiae on behalf of Petitioners.

Lowell E. Lathrop, District Attorney, and Joseph A. Burns, Deputy District Attorney, for Real Party in Interest.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley

D. Mayfield and Jay M. Bloom, Deputy Attorneys General, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—Petitioners are charged with possession of marijuana for sale and transportation of marijuana. (Health & Saf. Code, §§ 11359, 11360.) Their motion to suppress contraband evidence was denied by the respondent court at a pretrial hearing. (Pen. Code, § 1538.5, subd. (i).) Petitioners now seek a writ mandating the respondent to vacate its ruling and to suppress the evidence. (*Id.*)

Petitioners contend that all contraband seized by the officers who arrested them must be suppressed because the officers lacked initial probable cause to search the passenger compartment of petitioners' vehicle. This search disclosed only a small quantity of marijuana. Petitioners also contend that in any event, the substantial quantity of marijuana found during a further search of the trunk compartment of the vehicle must be suppressed because the search of the trunk was constitutionally impermissible. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.) They additionally urge that they were denied due process of law and a fair hearing on their motion to suppress because of commingling of the marijuana found in different parts of the car. We conclude that although the search of the passenger compartment of the car was legally justified, the search of the trunk was not constitutionally permissible. The evidence thus found in the trunk must be suppressed. We further conclude that the commingling complained of did not result in a denial of due process of law.

At approximately 2:30 a.m., California Highway Patrol Officers Moffett and Najera observed a car as it swerved a couple of feet into an adjoining lane on a state highway. The officers followed the vehicle for about three-quarters of a mile, clocking it at speeds ranging as high as 14 m.p.h. above the lawful speed. The car continued weaving, moving several times over the dividing line between the two lanes.

It appeared to Moffett that the driver of the automobile was having some sort of problem, possibly drowsiness or intoxication. The officer activated his emergency lights and the car was stopped. Najera approached the driver's side of the vehicle and discussed the reason for the

stop with the driver, petitioner Steven Brian Wimberly. Moffett approached the passenger's side where petitioner, Richard Michael Harrison, was seated. With the aid of his flashlight he peered into the vehicle and saw a jacket, a paper bag, a water jug, and a smoking pipe on the floor near Harrison's feet.

As Moffett continued to look into the car, Harrison aided Wimberly in retrieving some vehicle registration papers from the glove compartment. Moffett then observed about 12 round, dark seeds next to the pipe on the floor. The general characteristics of the seeds, coupled with their proximity to the pipe, led Moffett to believe them to be marijuana seeds. Moffett requested Harrison to hand him the pipe and Harrison complied. Moffett smelled the pipe and detected the odor of burnt marijuana. He also noticed a burnt residue which included some seeds and stems in the pipe.

Both petitioners responded to an order to leave the car. Both officers then detected a slight odor of burnt marijuana from inside the car. Moffett searched the interior of the car. Secreted in a pocket of the jacket he found a plastic bag containing a small quantity of marijuana. He placed the marijuana seeds which he had removed from the floor of the vehicle into that bag. No other contraband was found inside the passenger compartment. However, the officers used the car keys to open the trunk compartment of the car where they found several pounds of marijuana, in both vegetable and hashish form, in a suitcase.

## WARRANTLESS SEARCH OF THE INTERIOR OF THE CAR

 Petitioners first challenge the validity of the warrantless search of the passenger compartment of their car.[1] They urge that Officer Moffett did not have probable cause to believe the vehicle contained contraband, and that his seizure of the pipe and the subsequent search of the vehicle were illegal. We disagree. Based on Moffett's past experience, the close proximity of the seeds to the pipe, and the previously observed erratic driving, he reasonably believed the seeds were marijuana. He was therefore justified in seizing and examining the pipe and in subsequently searching the passenger compartment of the car.

---

[1]Petitioners do not contest the validity of the initial stop. Rather they concede that the officers properly stopped their vehicle for a speeding violation. But that alone did not justify the subsequent warrantless search of their car for contraband. (*People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 812-816 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

 The Fourth Amendment to the United States Constitution and the essentially identical but independent guarantee of personal privacy of article I, section 13 of the California Constitution (see *People* v. *Brisendine* (1975) 13 Cal.3d 528, 548-550 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Dumas* (1973) 9 Cal.3d 871, 879 [109 Cal.Rptr. 304, 512 P.2d 1208]) have long been interpreted to require the impartial approval of a judicial officer before the undertaking of most searches. The warrant requirement of these provisions "may be dispensed with in only 'a few specifically established and well-delineated' circumstances. (*Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507].)" (*People* v. *Dumas, supra,* 9 Cal.3d 871, 880.)

"In *People* v. *Dumas* (1973) 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208], we stated that officers are empowered under the *Carroll* [*Carroll* v. *United States* (1925) 267 U.S. 132 (69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790)] doctrine to search an automobile as 'long as it can be demonstrated that (1) exigent circumstances rendered the obtaining of a warrant an impossible or impractical alternative, and (2) probable cause existed for the search.' (*Id.,* at p. 884, see also concurring opn. by Sullivan, J., at p. 886, fn. 1; see also *Chambers* v. *Maroney* (1970) 399 U.S. 42, 52 [26 L.Ed.2d 419, 428-429, 90 S.Ct. 1975]; *People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145].)" (*People* v. *Cook* (1975) 13 Cal.3d 663, 669 [119 Cal.Rptr. 500, 532 P.2d 148].) It is therefore manifest that "when there is probable cause to believe that an automobile stopped on a highway contains contraband, evidence of a crime, or was itself an instrumentality of the commission of one, law enforcement officers need not obtain a warrant before conducting a search . . . ." (*People* v. *Laursen, supra,* 8 Cal.3d 192, 201; see also *People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d 807, 815.)

 We must, therefore, decide whether Officer Moffett had probable cause to seize the pipe[2] and subsequently search the interior of the

---

[2]We note at the outset that the seizure of the pipe could not be supported by the "plain view" doctrine alone. Although an observation of an item in plain view is not itself a "search" in the constitutional sense (see, e.g., *People* v. *Hill* (1974) 12 Cal.3d 731, 748 [117 Cal.Rptr. 393, 528 P.2d 1]; *Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 6, fn. 3 [109 Cal.Rptr. 684, 513 P.2d 908]; cf. *People* v. *Terry* (1969) 70 Cal.2d 410, 428 [77 Cal.Rptr. 460, 454 P.2d 36]), and the use of a flashlight to illuminate the interior of the vehicle is also of no constitutional significance (*People* v. *Hill, supra,* 12 Cal.3d 731, 748; *People* v. *Superior Court (Mata)* (1970) 3 Cal.App.3d 636 [84 Cal.Rptr. 81]) the seizure must nevertheless be justified. (*Guidi* v. *Superior Court, supra,* 10 Cal.3d 1, 8, 10-17; cf. *Thomas* v. *Superior Court* (1972) 22 Cal.App.3d 972, 976-977 [99 Cal.Rptr. 647].)

car for contraband. We have often stated that probable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched. (See, e.g., *People v. Hill, supra,* 12 Cal.3d 731, 747-748; *People v. Dumas, supra,* 9 Cal.3d 871, 885; *People v. Superior Court (Kiefer) supra,* 3 Cal.3d 807, 815-816.) On review, the appellate court must uphold probable cause findings if supported by substantial evidence. (*People v. Gale* (1973) 9 Cal.3d 788, 792-793 [108 Cal.Rptr. 852, 511 P.2d 1204]; *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

Here there is substantial evidence in support of the finding below that Moffett had probable cause. The observation of the seeds alone was sufficient to justify the search and seizure. In *People v. Superior Court (Kiefer), supra,* 3 Cal.3d 807, 816-817, we held that the observation from outside the vehicle of contraband in plain view inside the vehicle may furnish probable cause to believe that additional contraband is secreted therein and to justify a search therefor. (See fn. 2, *ante.*) Thus, the observation of even an unusable quantity of marijuana has been deemed sufficient to justify the search of a vehicle for additional contraband. (*People v. Evans* (1969) 275 Cal.App.2d 78, 82-83 [79 Cal.Rptr. 714] (seeds and debris observed on seat of vehicle); *People v. Schultz* (1968) 263 Cal.App.2d 110, 114 [69 Cal.Rptr. 293], approved in *People v. Fein* (1971) 4 Cal.3d 747, 754-755 [94 Cal.Rptr. 607, 484 P.2d 583] (a single seed, plus a few strands of debris observed on left rear floor of vehicle); see also *People v. Terry, supra,* 70 Cal.2d 410, 428 (one marijuana cigarette on an open ashtray); *People v. Spelio* (1970) 6 Cal.App.3d 685, 688 [86 Cal.Rptr. 113] (seeds along door runner); but see *Thomas v. Superior Court, supra,* 22 Cal.App.3d 972, 976-977 (plain view of hand-rolled cigarettes does not furnish probable cause).) Additionally, the observation of the seeds adjacent to the smoking pipe on the floor of the vehicle which had been operated in an erratic manner further supported the reasonableness of Moffett's conclusion that the seeds were marijuana.

Petitioners cite *People v. Fein, supra,* 4 Cal.3d 747 for the proposition that the observation of a few burnt marijuana seeds and the subsequent observation of a residue of burnt marijuana in the pipe bowl did not support the inference that a search would uncover larger, usable

quantities of marijuana.[3] In *Fein* we held that the observation of a few burnt marijuana seeds "would not give rise to a reasonable inference or strong suspicion that the occupants of the apartment in which the seeds were found were presently guilty of a crime." (*Id.,* at p. 754.) But *Fein* involved probable cause to arrest and concluded that the evidence of useless traces would not justify an arrest for present use, possession, or sale. (*Id.,* at p. 754.) *Fein* specifically did not decide the issue of probable cause to believe that additional contraband might be found in the passenger compartment of a vehicle. (*Id.,* at pp. 754-755 (approving *People* v. *Schultz, supra,* 263 Cal.App.2d 110).)

Petitioners argue that Officer Moffett was not an expert in the identification of marijuana, that he could not have reasonably believed the seeds were contraband, and that a mere hunch that the seeds were marijuana could not have justified the search and seizure. ■ It is fundamental that an officer's observations can give rise to probable cause only if that officer had sufficient training and experience from which to draw the conclusions necessary to create a reasonable belief in the presence of contraband. (See *People* v. *McKinnon* (1972) 7 Cal.3d 899, 917 [103 Cal.Rptr. 897, 500 P.2d 1097].) It is also true that a search cannot be justified by only a mere hunch. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 154 [98 Cal.Rptr. 649, 491 P.2d 1].) It is not necessary, however, that the officer qualify as an expert to be able to form the reasonable belief necessary to justify his actions.

■ There is here substantial evidence to support the conclusion that Officer Moffett had sufficient experience to reasonably believe the seeds were marijuana. He testified at the suppression hearing that his experience and training in observing and detecting marijuana included "quite a few arrests for marijuana" as well as various law enforcement training classes. Although the court expressly stated that Moffett would not be accepted as an expert at identifying marijuana, the court differentiated between expert identification and probable cause and found that Moffett had enough experience to formulate a reasonable suspicion.

Finally, petitioners cite *People* v. *Williams* (1971) 5 Cal.3d 211 [95 Cal.Rptr. 530, 485 P.2d 1146] for the proposition that there was no

---

[3]The record is not clear whether the seeds found near petitioner Harrison's feet were burnt or fresh. Petitioners' citation of *Fein,* however, suggests at least that they believe that the seeds were burnt. For purposes of this discussion we assume the seeds were, in fact, burnt.

probable cause to believe additional marijuana was secreted in the vehicle because Moffett had no evidence to show that either of the petitioners was aware of the nature of the seeds on the floor. Petitioners' reliance on *Williams* is misplaced. That case did not involve probable cause to search. Rather, it dealt with the sufficiency of evidence to convict. Williams was charged with the unlawful possession of a restricted dangerous drug. We reversed the judgment of conviction because there was no substantial evidence to show that he had the requisite knowledge of the character of the pills found in the vehicle in which he had been arrested.[4]

We conclude that Moffett had probable cause to believe the vehicle contained contraband, that he acted reasonably in seizing and examining the pipe to confirm his suspicions (see *Guidi* v. *Superior Court, supra,* 10 Cal.3d 1, 10-12 and fns. 9-10), and that the subsequent search of the passenger compartment was constitutionally permissible.

## WARRANTLESS SEARCH OF TRUNK COMPARTMENT

Petitioners further challenge the validity of the warrantless search of the trunk on the ground that even if *Carroll* and its progeny justify the initial warrantless search of the passenger compartment, there was no probable cause to justify the intrusion into the trunk.[5]

We proceed first to an analysis of whether independent justification is required for the trunk search. The People maintain that the police

---

[4]In the instant case, the officers' observations and detection of the odor of burnt marijuana indicated that petitioners had recently smoked marijuana, thereby providing a basis to believe petitioners were aware of the nature and existence of the contraband found in their vehicle. Nor could petitioners rely on *Williams* for the proposition that there is insufficient evidence to support a conviction.

[5]Petitioners also argue that the warrantless search cannot be justified as incident to their arrest. We agree. "A search incident to an arrest is limited to the arrestee's person and 'the area from within which he might gain possession of a weapon or destructible evidence.' (*Chimel* v. *California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034].)" (*Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 541 [102 Cal.Rptr. 729, 498 P.2d 977]; see also *People* v. *Brisendine, supra,* 13 Cal.3d 528, 539; *People* v. *Dumas, supra,* 9 Cal.3d 871, 881, fn. 6.) It is evident that the trunk of the car was not an area into which petitioners could reach in order to grab weapons or evidence. (See *People* v. *Gale, supra,* 9 Cal.3d 788, 794; *People* v. *Superior Court (Courie)* (1974) 44 Cal.App.3d 207, 211, fn. 5 [118 Cal.Rptr. 586].) Of course, "the scope of a permissible search where there is probable cause to believe that a vehicle contains contraband is not limited by the rules circumscribing the scope of a search incident to a contemporaneous arrest." (*People* v. *Cook, supra,* 13 Cal.3d 663, 670; see also *People* v. *Superior Court (Courie) supra,* 44 Cal.App.3d at p. 211, fn. 5.)

have a right to conduct a warrantless search of the entire vehicle where there is probable cause to believe any part of it contains evidence of a crime or contraband. The resolution of the issue must turn on the question whether the trunk of a vehicle is a distinct part of the car in which there is a reasonably greater expectation of privacy than in the passenger compartment. (*People* v. *Superior Court (Courie) supra,* 44 Cal.App.3d 207, 211, fn. 5.) Our cases have recognized this expectation of privacy in concealed areas as opposed to those portions of the vehicle subject to plain view observations. (*Mestas* v. *Superior Court, supra,* 7 Cal.3d 537, 540; *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699, 707 [94 Cal.Rptr. 412, 484 P.2d 84].)

In *Mozzetti* the petitioner was involved in a two-car collision and was removed to a hospital. Because her car blocked the roadway, police took custody of the vehicle and towed it to police storage. A routine inventory search uncovered marijuana in a closed suitcase on the back seat. We held that the vehicle owner's interests in maintaining the privacy of his personal effects in closed containers and concealed areas outweighed the police interest in protecting the owner from loss or damage while the vehicle was in storage. We concluded that "because the automobile involved was a convertible, adequate protection of valuables could be achieved by raising the top or, if necessary, by moving visible items, like the small suitcase, into the trunk for safekeeping." (*Mozzetti* v. *Superior Court, supra,* 4 Cal.3d 699, 707.)

In *Mestas* we were also concerned with an impound search of a vehicle during the course of which the trunk was opened and incriminating evidence was found. Relying on *Mozzetti* we concluded that "while the police may observe and inventory items in plain sight, they may not, in the absence of probable cause, open and search closed areas of the vehicle or closed containers within the car." (*Mestas* v. *Superior Court, supra,* 7 Cal.3d 537, 540.)

In *People* v. *Superior Court (Courie) supra,* 44 Cal.App.3d 207, 211, footnote 5, the court recognized that "a separate and distinct intrusion of defendant's privacy occurred when a trunk was unlocked and opened —an intrusion, moreover, into the area of the car in which defendant probably had the greatest reasonable expectation of privacy."

It is also true that "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 18 [20 L.Ed.2d 889,

903-904, 88 S.Ct. 1868]; see also *People* v. *Brisendine, supra,* 13 Cal.3d 528, 538.) Consequently, "the scope of an automobile search, like any other search, must be strictly tied to and justified by the circumstances occasioning it." (*People* v. *Superior Court (Courie) supra,* 44 Cal.App.3d 207, 213; cf. *Cooper* v. *California* (1967) 386 U.S. 58, 61 [17 L.Ed.2d 730, 733, 87 S.Ct. 788].)

■ In light of the foregoing principles we can only conclude that the existence of probable cause to search the interior of a car is not necessarily sufficient to justify the search of the car's trunk. A search based on probable cause which reasonably only tends to support the inference that contraband or evidence will be found in the passenger compartment will be of intolerable intensity and scope if expanded to include a closed trunk. In such a situation there must be some specific articulable facts which give reasonable cause to believe that seizable items are, in fact, concealed in the trunk. (*People* v. *Cook, supra,* 13 Cal.3d 663, 670; *People* v. *Superior Court (Courie) supra,* 44 Cal.App.3d 207, 211, fn. 5; *People* v. *Gregg* (1974) 43 Cal.App.3d 137, 141-142 [117 Cal.Rptr. 496]; see generally *People* v. *Jochen* (1975) 46 Cal.App.3d 243 [119 Cal.Rptr. 914] (holding that the search of a car was too extensive where the officers searched the glove and trunk compartments without probable cause or urgency).)

In support of their contention that there are no spatial limitations on the scope of automobile search based upon probable cause, the People argue that a long line of both federal and California cases supports the proposition that because of the mobile nature of automobiles, the police have a right to conduct a warrantless search of the entire vehicle when there is probable cause to believe any part of the vehicle contains evidence of a crime or contraband. For reasons which follow we do not agree with the People's analysis of the cited cases.

We turn first to the federal cases. The People correctly note that *Carroll* v. *United States, supra,* 267 U.S. 132 and *Chambers* v. *Maroney, supra,* 399 U.S. 42 did not distinguish between the different compartments of an automobile, but merely upheld warrantless searches based upon probable cause where exigent circumstances existed. We note, however, that in both cases the probable cause upon which the search was based applied to the vehicles *as a whole* and was not focused solely upon the passenger compartments thereof. Thus in *Carroll* the law enforcement officers had probable cause to believe that "the Carroll boys, as they called them, were so-called 'bootleggers' " (*Carroll* v.

*United States, supra,* 267 U.S. 132, 160 [69 L.Ed. 543, 554]) who generally transported contraband in their vehicle. It was proper to search the entire car for hidden contraband. And in *Chambers,* where officers stopped the vehicle and arrested its occupants for robbery, the police had probable cause to believe the entire car contained weapons and the fruits of recent crime. (*Chambers* v. *Maroney, supra,* 399 U.S. 42, 47 [26 L.Ed.2d 419, 426].)

In *Cady* v. *Dombrowski* (1973) 413 U.S. 433 [37 L.Ed.2d 706, 93 S.Ct. 2523] the United States Supreme Court specifically upheld the search of a trunk where police officers were looking for a revolver as part of an inventory search of the vehicle. Dombrowski was an out-of-state police officer involved in a one-car accident. He was arrested for drunken driving and his car was towed to a garage for safekeeping. The high court upheld the caretaking search for the gun because of the police "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." (*Id.,* at p. 447 [37 L.Ed.2d at p. 718].) The court approved of the intrusion into the trunk because the officers reasonably believed it contained the gun. (*Id.,* at p. 448 [37 L.Ed.2d at pp. 718-719].)[6]

Nor do the California cases support the People's contention. In *People* v. *Laursen, supra,* 8 Cal.3d 192, police searched an automobile which eyewitnesses identified as the vehicle used by the robbers in an aborted attempt to escape. We upheld the search, including a search of the trunk even though there was no specific information that the trunk contained any evidence relating to the crime. It is important to note, however, that the probable cause upon which we upheld that search pertained to the vehicle as a whole. Thus, we said: "Having connected the robbery with the Mercury on the basis of these reports the officers had reason to suspect that some evidence helpful in the apprehension of the culprits and investigation of the crime would be contained within." (*Id.,* at p. 201, fn. 8.)

---

[6]The People also incorrectly rely on *Chimel* v. *California, supra,* 395 U.S. 752. *Chimel* applied spatial limitations to searches incident to lawful arrests. The fact that the rules announced in *Chimel* are inapplicable to searches of automobiles based upon probable cause (*id.,* at p. 764, fn. 9 [23 L.Ed.2d at p. 694]; *People* v. *Freeny* (1974) 37 Cal.App.3d 20, 29 [112 Cal.Rptr. 33]; see fn. 5, *ante*) cannot be interpreted as meaning that no spatial limitations are applicable to automobiles. Thus, in *People* v. *Cook, supra,* 13 Cal.3d 663, 670, we specifically held that a trunk search was not beyond permissible limits because "[t]he record clearly establishes that the officers had probable cause to believe that the trunk compartment contained marijuana . . . ."

*People* v. *Dumas, supra,* 9. Cal.3d 871 also upheld the warrantless search of a car and its trunk. Again, the search was justified on reasonable belief that some part of the vehicle contained stolen bonds.[7]

Finally, in *People* v. *Hill, supra,* 12 Cal.3d 731, we upheld both the roadside search and the later, exhaustive post-impound search of defendants' car because the officers had probable cause to believe it contained contraband. When the police attempted to halt defendants for failing to make a required traffic stop, defendants accelerated to high speeds and took evasive actions. They were eventually stopped and a search was conducted after a pat-down of one of the defendants uncovered a large roll of money and a box of .32 caliber bullets, and what was believed to be marijuana was observed in plain view in the car (a "kilo" on the rear seat and three "joints" on the front floorboards). The vehicle was then impounded and an exhaustive search disclosed evidence ultimately helping to link defendants to the murder for which they were convicted. As before, the probable cause which justified the searches applied to the vehicle as a whole. We specifically held that because of the plain view observations *and the desperate attempts to avoid apprehension,* "it was reasonable to conclude that the defendants were transporting contraband in their automobile." (*Id.,* at p. 748; for additional cases, see *People* v. *Balassy* (1973) 30 Cal.App.3d 614, 622 [106 Cal.Rptr. 461] (specific knowledge that counterfeit checks were kept in trunk); *People* v. *Stafford* (1973) 29 Cal.App.3d 940, 946-948 [106 Cal.Rptr. 72] (probable cause to search trunk for stolen items); *People* v. *Medina* (1972) 26 Cal.App.3d 809, 817 [103 Cal.Rptr. 337] (probable cause to search trunk for fruits of robbery).)

The People also raise various policy considerations in support of their contention that there are, and should be, no spatial limitations on the scope of an automobile search based upon probable cause. They first argue that once an officer has the right to search a portion of the vehicle, it is absurd to recognize any right of privacy as to the remaining portions thereof. In conjunction therewith, the People also claim that it is inappropriate to compartmentalize a car into various divisions in light of the overall size of the car and proximity of each area to the other areas.

---

[7]That we were concerned that the entry into the trunk be justified is clear from the fact that we noted that one of the police officers tried to justify the intrusion into the trunk by claiming he saw a firearm therein by looking through a side window, but the facts proved no such observation could have been made. We concluded that "[t]he officer's creative imagination obviously cannot provide the probable cause necessary to justify the warrantless search in this case." (*People* v. *Dumas, supra,* 9 Cal.3d 871, 875 & fn. 1.)

"However, we must keep in mind that if the officers have the right to engage in a warrantless search of the entire car they may do so by any means reasonably available; thus, if the trunk key cannot be located they may break open the trunk. Carried to its logical end, if the officers have the right to search the entire car and it is necessary to accomplish their purpose, they may rip apart any part of the car in which they should suspect that additional contraband may be found." (*People* v. *Gregg, supra,* 43 Cal.App.3d 137, 141-142; see also *People* v. *Cook, supra,* 13 Cal.3d 663, 668 (the trunk lid was pried open).) Therefore, the People's arguments must be rejected. As noted, there is a recognized and protectible privacy interest in concealed areas of a car, and the search of a car like all other searches must be properly circumscribed to be "reasonable" within the meaning of the Fourth Amendment and article I, section 13, of the California Constitution.

As their final policy argument, the People contend that the rule we announce today will put an extreme burden on the courts, attorneys, and law enforcement officials in determining what circumstances serve as justification for a full search of a vehicle. We are fully cognizant of how convenient it would be (save for citizens subjected to searches) if we adopted the rule proffered by the People, but appellate courts are constitutionally bound to analyze each warrantless search on a case-by-case basis as to "whether the extent of the search exceeded the attainment of the objectives which justified its inception." (*People* v. *Brisendine, supra,* 13 Cal.3d 528, 541; see also *Cooper* v. *California, supra,* 386 U.S. 58, 59 [17 L.Ed.2d 730, 732]; *People* v. *Lawler, supra,* 9 Cal.3d 156, 160 (appellate courts have the ultimate responsibility to measure the facts, as found by the trier of facts, against the constitutional standard of reasonableness).)

We now reach the issue whether there was probable cause to justify. the particular warrantless search of the trunk of petitioners' car.[8] We have seen that probable cause for a search exists when an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched.

*People* v. *Gregg, supra,* 43 Cal.App.3d 137 presented a factual situation almost identical to the instant case. After a traffic stop for speeding law enforcement officers observed approximately 10 marijuana

---

[8]The People have the burden of justifying warrantless searches. (*People* v. *Hill, supra,* 12 Cal.3d 731, 747; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

seeds on the seat of the car and detected a strong odor of burning marijuana. The occupants were placed under arrest and the car was searched. Marijuana debris was found in a jacket pocket which was located on the rear seat. Although no other contraband was found in the passenger compartment, the officers opened the trunk and found approximately six pounds of marijuana. (*Id.,* at pp. 139-140.) The court, concluding that "these facts logically do not aid in the determination of whether marijuana might be concealed in the trunk" (*id.,* at p. 143), reasoned: "the lawful observation of marijuana debris on a seat or the floor of the interior of the car, or in the clothing of the occupants, or the smell of burned marijuana emanating from the interior of the car would give probable cause to believe that marijuana might be found in the areas *adjacent and immediately accessible to the occupants,* such as ashtrays, a passenger console, a glove compartment and underneath and between the seats. . . . [¶] Similarly, if a substantial quantity of marijuana is found inside the automobile or on the person of an occupant, it reasonably may be inferred that additional contraband may be concealed in areas of the car not immediately accessible and adjacent to the occupants, such as the trunk or under the hood. A substantial quantity of marijuana in the interior of the car would give rise to a logical inference that the car was being used to transport marijuana." (*Id.,* at p. 142.)

The result reached in *Gregg* is eminently sound. Just as the statutes differentiate between the casual user and the dealer of narcotics (compare Health & Saf. Code, §§ 11350, 11357 with Health & Saf. Code, §§ 11351, 11352, 11359, 11360), logic compels that we also differentiate between the two and recognize that all casual users are not dealers. Here, the erratic driving, the plain view observation of the marijuana seeds adjacent to the pipe, the odor of burnt marijuana, the burnt residue in the pipe, and the small quantity of marijuana secreted in the jacket indicate only that petitioners were casual users of marijuana. It was thus proper to search adjacent areas of the vehicle (see generally *People* v. *Superior Court (Silver)* (1970) 8 Cal.App.3d 398, 402-403 [87 Cal.Rptr. 283]), but it was not reasonable to infer that petitioners had additional contraband hidden in the trunk.[9]

---

[9]We disapprove of *People* v. *Superior Court (Courie) supra,* 44 Cal.App.3d 207 to the extent that it is contrary to our views under facts remarkably similar to the instant case. In *Courie,* after a valid traffic stop, the detection of the odor of burnt marijuana and field sobriety tests led the officers to the conclusion that Courie had been driving under the influence of marijuana. The car was then searched. A partially smoked "joint" was found in the ashtray. A metal cigar tube, containing approximately half an ounce of marijuana, and a plastic bag containing two ounces of marijuana, were discovered in the glove compartment. The trunk was then opened uncovering three-and-a-half "kilos" of

We do not conclude, however, that trunk searches are never justified when the quantity of contraband found is indicative only of personal use. Rather, we recognize that additional circumstances may generate the reasonable suspicion necessary to justify the further intrusion. Thus, for example, in *People* v. *Hill, supra,* 12 Cal.3d 731, 748 it was reasonable to assume the defendants were transporting marijuana where a desperate attempt to avoid apprehension was followed by the plain view discovery of contraband in the car. (See also *People* v. *Martin* (1956) 46 Cal.2d 106, 108 [293 P.2d 52].) And, in *People* v. *Cook, supra,* 13 Cal.3d 663, 670 we held that the officers had probable cause to search the trunk where the odor of fresh marijuana was much stronger than that which could be attributed to the items found in the passenger compartment.

### COMMINGLING OF THE MARIJUANA SEEDS

■ Finally, petitioners contend that they were denied due process of law and a fair hearing on their motion to suppress because of the commingling of the marijuana seeds with the marijuana found in the plastic bag. Petitioners argue that the commingling of the seeds deprived them of the opportunity to test their nature and existence for purposes of challenging probable cause. To the extent petitioners claim the commingling of the seeds deprived them of the opportunity to test the nature of the seeds, their contention must fail. They do not claim, nor have they shown, that laboratory tests cannot be performed on all the seeds in the plastic bag, revealing which seeds, if any, are not marijuana or do not resemble marijuana seeds. Therefore, petitioners have suffered only minimal prejudice by the added burden of having to examine all the seeds.

To the extent petitioners claim that they have been deprived of the opportunity to prove that no seeds ever existed, the essence of their claim is not the destruction of evidence, but rather the officers' lack of

---

marijuana in several brown paper bags. (*Id.,* at pp. 210-211.) The court followed the holding of *Gregg,* requiring probable cause to justify the intrusion into the trunk, but concluded that the trunk search was justified. The court felt that because there was a substantial quantity of marijuana and because most of it had been concealed, it could reasonably have been inferred that there might be more contraband hidden elsewhere. (*Id.,* at p. 213.)

To the contrary, the marijuana discovered, although a larger quantity than found in *Gregg,* was still only enough to be consistent with personal use. Furthermore, the manner in which it was packaged was also consistent with personal use. Finally, it is of no significance that the marijuana was hidden. Neither a casual user nor a dealer would be likely to leave any quantity in plain view and a casual user is likely to conceal his marijuana where readily accessible.

credibility. They thus urge not that Moffett destroyed evidence but that his claim to have seen the seeds and Najera's confirmation that he also saw the seeds were fabrications. Again, petitioners were not denied any material evidence.[10]

Let a peremptory writ of mandate issue compelling the respondent court to suppress evidence found in the trunk of petitioner's vehicle.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**CLARK, J.,** Dissenting.—The majority conclude generally that probable cause to search part of a car does not necessarily justify searching the entire car. They conclude specifically that discovery of a quantity of marijuana "indicative only of personal use" in the interior of a car does not provide probable cause to believe that more marijuana will be found in the trunk. Neither conclusion is supported by reason or authority.

For their general conclusion, the majority rely on *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84]; *Mestas* v. *Superior Court* (1972) 7 Cal.3d 537 [102 Cal.Rptr. 729, 498 P.2d 977]; *People* v. *Gregg* (1974) 43 Cal.App.3d 137 [117 Cal.Rptr. 496]; and *People v. Superior Court (Courie)* (1974) 44 Cal.App.3d 207 [118 Cal.Rptr. 586].

*Mozzetti* and *Mestas* are inapposite. *Mozzetti* held that police may observe and inventory items in plain view in an impounded car, but may not, in the absence of probable cause, open and search a suitcase found in the passenger compartment. *Mestas* followed *Mozzetti,* suppressing evidence discovered in a routine inventory search of the trunk of an impounded automobile. Had the police discovered evidence or contraband in plain view during their routine inventories of the impounded vehicles, *Mozzetti* and *Mestas* would have presented the question whether such a discovery provides probable cause to search closed areas of a vehicle or closed containers within it for additional evidence or contraband. However, as the police made no such discovery in either

---

[10]Petitioners have not sustained their burden of showing that the officers' testimony was not credible. Moffett was cross-examined extensively as to his ability to identify marijuana seeds but petitioners never challenged his underlying claim to have seen seeds on the floor near Harrison's feet. Najera also testified that he saw the seeds—Moffett pointed them out to him before Moffett began his search of the passenger compartment—but his veracity was never brought into issue.

Because we have rejected on the merits petitioners' claim of a denial of due process resulting from commingling the contraband seized by the officers, we need not reach the further issue whether such a claim may be asserted on a motion to suppress evidence or on a review of the denial of such a motion pursuant to Penal Code section 1538.5.

case, neither *Mozzetti* nor *Mestas* casts light on the question presented here.

In reaching the novel conclusion that the discovery of a small amount of marijuana in the passenger compartment of an automobile provides probable cause to search the remainder of the passenger compartment, but not the trunk, *Gregg* relied entirely on the following cases: *People v. Superior Court (Silver)* (1970) 8 Cal.App.3d 398 [87 Cal.Rptr. 283]; *People v. Spelio* (1970) 6 Cal.App.3d 685 [86 Cal.Rptr. 113]; *Fraher v. Superior Court* (1969) 272 Cal.App.2d 155 [77 Cal.Rptr. 366]; and *People v. Schultz* (1968) 263 Cal.App.2d 110 [69 Cal.Rptr. 293].

*Fraher* did not involve an automobile search. An officer looking through the window of a house observed what he believed to be a marijuana pipe. He knocked on the door, entered with permission, observed marijuana debris in the bowl of the pipe, arrested the occupants and searched the house, finding additional narcotics. Upholding the search, the court stated, "The observation of marijuana debris which is insufficient to sustain a conviction is sufficient to constitute reasonable cause to make an arrest and to believe that a larger amount of marijuana may be present in close proximity to the debris." (272 Cal.App.2d at p. 163.) Perhaps because *Fraher* was decided prior to *Chimel v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the court did not bother to specify exactly how close the remaining contraband was to either the pipe or the occupants. However, *Fraher* clearly provides no support for the novel position taken in *Gregg.*

In *Silver,* an officer looking through the window of a Volkswagen van observed a hashish pipe in plain view on the back shelf of the vehicle. A search of the van then revealed a bag of hashish within a few feet of the pipe, a bag of marijuana behind the driver's seat, and narcotic paraphernalia "throughout the vehicle." Citing *Fraher,* the court upheld the search, observing, "From the presence of a homemade instrument designed to smoke a contraband narcotic it is logical to infer that the contraband itself may be hidden in close proximity to the smoking device." (8 Cal.App.3d at p. 402.) As Volkswagen vans do not have trunks, the court obviously had no occasion to consider whether a trunk search would have been justified under the circumstances.

In *Schultz* and *Spelio,* officers observed marijuana seeds in plain view in the passenger compartments of the defendants' automobiles. Searches of the automobiles then revealed more marijuana. In *Schultz,* the court

held "the officer, upon observing a marijuana seed in the automobile in which defendants were riding, had reason to believe other marijuana might be located in the automobile." (263 Cal.App.2d at p. 114.) In *Spelio*, the court held "[h]aving seen the marijuana seeds, Officer Clements certainly had probable cause to believe the car contained further contraband." (6 Cal.App.3d at p. 688.) There is no indication in either case that the search was limited to the passenger compartment, or that the court was of the opinion that it should have been so limited.

Its reliance on prior authority being misplaced, *Gregg* should be overruled, not followed. *Courie* adds nothing to *Gregg;* it merely accepts *Gregg* without analysis, distinguishing *Gregg* on its facts. (44 Cal.App.3d at pp. 211-214.) The majority's vain attempt to distinguish all of the other cases bearing on this question underscores the fact that the rule announced today is unprecedented in the decisions of this court or the United States Supreme Court.

The majority's specific conclusion is based on their assumption that a "casual user"[1] of marijuana transporting the contraband by car will keep his entire supply in the passenger compartment. Granted, a court may take judicial notice of facts and propositions that are matters of such common knowledge that they cannot reasonably be the subject of dispute. (Evid. Code, § 452, subd. (g); *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 716 [63 Cal.Rptr. 724, 433 P.2d 732]; *People* v. *Torres* (1961) 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823].) And, true, some propositions concerning the drug culture have become matters of such common knowledge that judicial notice may be taken of them. (See, e.g., *People* v. *Torres, supra,* 56 Cal.2d at pp. 866-867 (capsules and milk sugar are used in processing narcotics); *People* v. *Hubbard* (1970) 9 Cal.App.3d 827, 831 [88 Cal.Rptr. 411] ("reds" is a slang term for Seconal capsules).)

However, the assumption made by the majority is not such a proposition. Rather than it being a matter of common knowledge that a marijuana user keeps his entire supply in the passenger compartment, this assumption is plainly inconsistent with what we know of the behavior patterns of persons transporting contraband. As the majority themselves point out, marijuana being contraband, neither a user nor a dealer transporting it by car will likely leave it in plain view. (*Ante,* p. 573,

---

[1]This curious coinage remains undefined except insofar as "logic" is said to compel differentiation between "casual use" and "dealing." (*Ante,* p. 572.) Nevertheless, this distinction will henceforth be required of the police officer determining whether probable cause exists for a trunk search.

fn. 9.) As the majority further point out, there is a greater expectation of privacy toward the trunk than the passenger compartment. (*Ante*, pp. 566-568.) Therefore, would a person transporting marijuana by car not more likely keep it in the trunk rather than in the passenger compartment? And if he kept some in the passenger compartment to use during the trip, where would he likely stash the remainder? The answers being obvious, I would deny the writ.

McComb, J., concurred.

**RICHARDSON, J.**—I concur in the judgment. Under the particular facts of this case, the officers lacked probable cause to believe that the trunk of petitioners' vehicle contained contraband. However, in those cases in which the circumstances tend to support a strong suspicion that the trunk of an automobile may contain contraband, I would permit a reasonable search of the trunk and its contents.