[Civ. No. 47244. First Dist., Div. Three. Jan. 22, 1980.]

JEFFEREY BELL, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Sheldon Portman, Public Defender, James M. Thompson and Michael A. Kresser, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Morris Lenk, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**FEINBERG, J.**—Petitioner was charged by information with possession of marijuana for sale (Health & Saf. Code, § 11359). He filed a motion

to suppress evidence pursuant to Penal Code section 1538.5. His motion was heard and the matter was submitted on the preliminary hearing transcript with no further testimony. By written opinion, the court denied the motion.

Thereafter, petitioner filed this petition. We issued an alternative writ.

## The Facts

In midafternoon, two plain clothed police officers were patrolling in an unmarked car in an area where there had been some daytime residential burglaries. While driving, officer Holmes observed four teenage males standing on the sidewalk in a circle. As the car approached, one of the youths was holding a white object about the size of a cigarette package though not appearing to be a cigarette package. The youth pulled it back and held it by his side, out of view of the officer, as the car went by. Holmes turned his car around and returned to the place where the youths were standing. As he was doing so, two of the youths entered a parked Volkswagon and drove off.

Holmes followed the Volkswagon. After he observed the Volkswagon exceed the 25-mile speed limit by some 5 or 10 miles and make an illegal turn, he stopped it.

Petitioner, the driver, got out of the car and met the officer just outside the driver's door. Officer Holmes asked for a driver's license, which petitioner showed him. Holmes then asked for vehicle registration. When petitioner opened the driver's door to get it, Officer Holmes detected a faint odor of marijuana.

At that point, Holmes ordered the passenger out and searched the car over petitioner's objection. He first leaned in through the driver's door and observed some marijuana roaches in the dash ash tray. He testified that he was not sure whether the ash tray was open or closed when he entered the car, but he thought it was open. Holmes continued to search the interior, finding an athletic bag on the floorboard behind the driver's seat within reach of a driver. He opened the bag, finding some tee shirts on top. Underneath them was a plastic bag with 17 smaller baggies in it. Each contained marijuana, but the total quantity in all the bags was about one ounce. Some scales and extra baggies were also

found in the athletic bag. Under the front seat, Officer Holmes found a cardboard box containing marijuana debris. Appellant was thereupon arrested.

### Was the Warrantless Search of Athletic Bag Valid?

The facts are simple and undisputed. The issue is clear.

The sequence of cases that began with *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476], and was followed by *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514], *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586], and *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal. Rptr. 497, 598 P.2d 467], strongly suggest that the warrantless search was improper.

Respondent seeks to distinguish these cases on a number of grounds.

1. In both *Chadwick* and *Sanders,* the law enforcement authority had probable cause to believe that contraband was within the very article seized, i.e., a footlocker in *Chadwick,* a piece of luggage in *Sanders,* whereas in the instant case, the police had probable cause to believe that contraband was *somewhere* within the vehicle rather than specifically in the athletic bag.

If this distinction makes a difference, California has not recognized it for in both *Minjares* and *Dalton* the police had probable cause to believe only that somewhere in the vehicle was that for which they were looking.

2. Respondent argues that the search here was incident to and contemporaneous with the arrest of petitioner. But that was the situation in *Sanders* and *Dalton.* Further, respondent appears to be in error when it asserts that petitioner had been arrested or that there was probable cause to arrest him. It is clear from the record that up to the time of the search, petitioner had not been arrested in the sense that he had been taken into custody. Nor did the officer have probable cause to arrest and take him into custody. At the most, petitioner had committed some traffic offenses for which he could have been cited but not taken into custody. Under California law in such a case, with nothing more, there can be no search at all of the stopped vehicle. (*People* v. *Superior*

*Court (Kiefer)* (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Superior Court (Simon) (1972)* 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Norman* (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237].)

Of course, in this case there was more. It is conceded by petitioner, as he had to, that not only was the vehicle stop legal but that there was probable cause to search the interior of the car. Respondent assumes that because there was probable cause to search, there was probable cause to arrest. The assumption is unwarranted.

In *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557 [128 Cal.Rptr. 641, 547 P.2d 417], the court pointed out that observations that would *not* justify an arrest on probable cause could justify, on probable cause, a search of the inside of a vehicle. (*Id.,* at pp. 564-565.)

In *People* v. *Fein* (1971) 4 Cal.3d 747 [94 Cal.Rptr. 607, 484 P.2d 583], cited with approval in *Wimberly,* the court specifically held that the evidence of recent past possession of narcotics does not justify an "arrest for present use, possession or sale." (*Id.,* at p. 754.) Here, the officer observed three or four burned out "roaches" and detected a faint odor of marijuana, only evidence at most, of recent past possession and use, and under *Fein,* insufficient to constitute probable cause to *arrest.* It is, of course, hornbook law that the arrest cannot be justified on the basis of what is found as a result of a search incident to the arrest.

■ Thus, we conclude that the search at issue cannot be justified as an incident to an arrest.

3. Respondent suggests that because petitioner had the alternative of being arrested, having his car impounded and a search warrant thereafter obtained, or consenting to an immediate search, immediate search was "the lesser intrusion."

There are several answers to respondent's contention:

a. Assuming respondent is correct as to the choices available to petitioner, it seems reasonably obvious that the choice should be the petitioner's. As the court said in *Minjares,* "An individual who prefers immediate search rather than the inconvenience of immobilization may

always *consent* to an immediate search." (24 Cal.3d at p. 423, italics added.)

b.   Respondent misconceives the alternatives for as we have already noted:

(i)   There was no probable cause to arrest petitioner and take him into custody.

(ii)   There was no need to seize the car because there was probable cause to search the interior of the vehicle at the scene.

(iii)   It was only the athletic bag that was to be seized and for which a warrant should have been obtained so that the alternative confronting petitioner was the seizure of the athletic bag and its retention in police custody pending an application for a warrant as against its immediate search at the scene.

One last issue remains to be disposed of. The able trial judge in denying the motion to suppress appears to have distinguished *Chadwick* in part on the ground that here unlike *Chadwick* the police did not have exclusive control of the athletic bag.

In *Wimberly*, an officer outside the car asked one of the petitioners seated in the passenger side of the front seat to hand him a smoking pipe lying on the floorboard adjacent to the passenger seat and the pipe was handed over. The Supreme Court held the taking of the pipe to constitute a seizure and one for which there was probable cause.

In the case at bench, petitioner and his passenger were outside the car while the officer was inside the car when the officer examined the athletic bag. We can see no difference of legal significance in the context of the seizure of the pipe in *Wimberly* as against the athletic bag here.

The officer having lawfully seized the athletic bag, we are at a loss to understand why the trial court was of the view that he did not have "exclusive control" of it. Certainly, neither petitioner nor his passenger were contesting the officer's possession of the bag. As we have noted, they were outside the car where there was another officer watching them while Officer Holmes had the bag. If the trial court purported to

distinguish *Chadwick* because in *Chadwick* the footlocker was removed from the scene and taken to the office of the authorities before the search was made, in *Sanders* and *Dalton,* the search was at the scene, as it was here. Unfortunately, the trial judge did not have the benefit of the opinions in *Sanders* and *Dalton* because they came down after the trial court had ruled upon the motion.

■ We conclude, therefore, that the athletic bag had been seized, should have been taken by the police, and thereafter a search warrant obtained before it could be searched.

We are left, however, with certain nagging questions with regard to the present law of search and seizure in California arising out of the existing California case law as it relates to the issue at hand. In *Wimberly,* in the course of the legal search of the inside of the car, an officer picked up a jacket lying on the floorboard of the car adjacent to the front passenger seat. The officer then searched the pocket of the jacket, finding secreted therein a bag of marijuana. If the rationale of the *Chadwick* line of cases is that there is such an expectation of privacy in luggage that it should be seized and then a search warrant obtained as against a warrantless search of the interior of the car itself, then it would seem that there is surely as great an expectation of privacy in the contents of the pockets of one's clothing. Has *Wimberly* then been overruled sub silentio insofar as it upheld the search of the jacket?

What remains, too, of the decision in *People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097]? There, five cardboard cartons were brought to an air freight shipper for forwarding. An employee became suspicious of the contents in the cartons. He partially opened one, examined the contents and believing it to be marijuana, called the police. A police officer arrived and verified that it was marijuana in the opened package. He located the consignors of the cartons (they were still at the airport) and arrested them. The officer then went back to the freight counter and opened the remaining four cartons each of which contained marijuana.

The *McKinnon* court sustained the warrantless search on the ground that the cartons were "readily movable," relying on *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]. The court specifically noted that the police could have seized the cartons and then

secured a warrant to search. But the court held that like the automobile in *Chambers* v. *Maroney, supra,* the cartons were easily movable and could therefore be searched in the field without a warrant for there was no "'constitutional difference'" between searching at the scene on the one hand and seizing the article to be searched and subsequently processing a search warrant on the other. (*Id.,* at p. 909.) But in *Chadwick, supra,* the United States Supreme Court said, "Nor does the footlocker's mobility justify dispensing with the added protections of the Warrant Clause" once it had been reduced to the possession of the federal agents. (433 U.S. at p. 13 [53 L.Ed.2d at p. 549].) Or, as the court said in *Sanders,* "A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But, as we noted in *Chadwick,* the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control. [Citation.] Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken. Accordingly as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places." (Fns. omitted.) (*Arkansas* v. *Sanders, supra,* 442 U.S. at pp. 763-764 [61 L.Ed.2d at pp. 244-245, 99 S.Ct. at p. 2593].)

Hopefully, the next time our high court has the occasion to address the question, we and the trial courts will be given clearer guidance.[1]

Let a writ of mandate issue directing the superior court to vacate its order denying the motion to suppress the evidence contained in the athletic bag and to enter its order granting said motion.

White, P. J., and Scott, J., concurred.

---

[1]We have adverted to only two cases which seem to have been overruled in part or in whole, sub silentio. As we read the opinions on the issue presented and seek to reconcile what appear to be conflicting opinions, we are reminded of something that Omar Khayyam wrote:
"Myself when young did eagerly frequent
  Doctor and Saint, and heard great argument
  About it and about: but evermore
  Came out by the same door wherein I went."
(Fitzgerald Translation, 4th ed. st. 27.)