[Crim. No. 4173. Fifth Dist. Sept. 23, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEX EDWARD GEORGE, Defendant and Appellant.

**COUNSEL**

Neal & Mevi and Alan Kornfeld for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Thomas R. Yanger, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

CONN, J.*—After a ruling of the trial court denying appellant's motion to suppress certain evidence, appellant entered a plea of guilty to a felony violation of section 11350 of the Health and Safety Code, possession of a controlled substance (LSD), upon condition that he be granted probation with local incarceration and that additional pending charges in the same action be dismissed. Appellant was sentenced in accordance with the negotiated disposition and now appeals from the judgment (order granting probation).

The issues presented in this appeal involve the legality of a warrantless search of a pocket of appellant's vest found during a lawful search of the front seat area of his vehicle, and a warrantless search of the trunk of his vehicle.

On Tuesday, February 28, 1978, at 3:50 in the afternoon, an officer of the California Highway Patrol spotted a motorcycle and appellant's automobile traveling north on Interstate 5 at a speed of 70 miles per hour. Having determined that the vehicles were speeding, the officer gave chase, pulled alongside appellant's automobile and directed him over the loudspeaker to follow the patrol car while he pursued the motorcycle. Appellant nodded his head up and down and followed the officer.

While chasing the motorcycle the officer kept an eye on appellant through his rearview mirror and noticed appellant's car to be weaving on the road and saw appellant ducking down, his head disappearing from sight several times.

As he was pulling the motorcycle over, the officer saw appellant go on past and then turn off the freeway onto Highway 152. Soon afterward, the officer caught up to appellant, turned on his emergency light,

*Assigned by the Chairperson of the Judicial Council.

and brought appellant's automobile to a stop. As the officer approached, appellant quickly got out of his vehicle. When asked for identification, appellant said he had none and then handed the officer a book of matches.

Stepping over to appellant's vehicle, but while remaining outside, the officer detected the odor of marijuana and could see 15 to 20 marijuana cigarette butts scattered on the front floorboard. On the rear floorboard he saw a flight bag and in plain view a baggie containing what appeared to be marijuana sticking out of an open pouch of the flight bag.

After directing appellant to stand by the front of the vehicle, the officer opened the door to search for more contraband. As he picked up a piece of particle board under the driver's seat he noticed marijuana cigarette butts and debris on it. The material was blown away by the wind when he removed the board from the car. Still searching for contraband, the officer picked up a blue vest which was lying on the front seat, patted the pockets, and then reached into and searched the pockets.

In a pocket of the vest, the officer found a baggie containing a cellophane strip with approximately 100 perforations on it. Based on his training and experience, he suspected that the strip contained LSD. He then searched the flight bag in the back seat and found a second baggie containing marijuana resting under the one he had spotted earlier. Both baggies contained a very small amount of marijuana.

After removing appellant's car keys from the ignition, the officer opened the trunk of the vehicle and found a locked metal suitcase, and a brown paper bag which was closed by being tightly rolled at the top. The officer opened the bag and found six ounces of marijuana. He then pried open the suitcase and found approximately one pound of marijuana.

Ultimately, appellant was charged with four felony violations. In count one of the information, appellant was charged with possession for sale of the marijuana found in the trunk. Count two alleged transportation of the same marijuana. Count three alleged possession for sale of LSD and count four alleged transportation of LSD. No charges were brought in regard to the marijuana debris found in the front seat or the baggies of marijuana found in the flight bag. The charges alleging pos-

session for sale in counts one and three were dismissed by the granting of appellant's motion under section 995 of the Penal Code.

Pursuant to section 1538.5 of the Penal Code, appellant moved to suppress the LSD seized from the pocket of his vest and the marijuana seized in the trunk of his automobile. The trial court denied the motion.

Count two was later dismissed in compliance with the negotiated disposition upon appellant's plea of guilty to possession of LSD, a lesser offense included in the charge alleged in count four of the information.

Appellant raises no issue as to the lawfulness of the initial detention or the search of the passenger compartment of his vehicle. However, appellant contends that the officer exceeded the constraints of the Fourth Amendment, first when he searched the pockets of appellant's vest found in the front seat and second, when he searched the trunk without first obtaining a search warrant.

In resolving the first issue it is necessary to determine whether the pocket of a vest is a place or area in which a person has an expectation of privacy such that it may not be lawfully searched without a warrant or the existence of special justification.[1] A number of cases have examined the status of various containers to determine whether they fall within the protection of the Fourth Amendment. ■ In *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586], the court discussed the relevant principles and noted: "The Fourth Amendment protects the privacy and security of persons in two important ways. First, it guarantees '[t]he right of the people to be secure in their persons, houses, papers, *and effects*, against unreasonable searches and seizures.' In addition, this court has interpreted the amendment to include the requirement that normally searches of private property be performed pursuant to a search warrant issued in compliance with the warrant clause. [Citations.]" (*Id.*, at pp. 757-758 [61 L.Ed.2d at p. 241, 99 S.Ct. at pp. 2589-2590] italics added.)

In *Arkansas* v. *Sanders, supra*, 442 U.S. 753, the court determined that "luggage is a common repository for personal effects and therefore

---

[1]At the outset, we take note that appellant was not near to nor was he wearing his vest at the time the officer searched the pocket. Thus we are not here confronted with an accelerated booking search. (See *People* v. *Barajas* (1978) 81 Cal.App.3d 999 [147 Cal.Rptr. 195].)

is inevitably associated with the expectation of privacy." (*Id.*, at p. 762 [61 L.Ed.2d at p. 244, 99 S.Ct. at p. 2592], quoting *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476].) The court in *Chadwick* reached the same determination where a locked footlocker was searched. An expectation of privacy has also been found to exist in regard to the search of an athletic bag (*Bell* v. *Superior Court* (1980) 101 Cal.App.3d 238 [161 Cal.Rptr. 455]); a lunch box (*People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811]); closed boxes (*People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467]); and a tote bag (*People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514]). On the other hand, in *People* v. *Diaz* (1980) 101 Cal.App.3d 440 [161 Cal.Rptr. 645], the court found no reasonable expectation of privacy in a Jack-In-The-Box paper cup with a lid on it.

Although the foregoing decisions have come to be known as "closed container" cases, it is of no help to us in our analysis to note that a vest pocket, unlike a lunch box, has no lid or, like a tote bag, cannot be locked. Rather, we must determine whether a vest pocket is such a common repository for personal effects that it is inevitably associated with the expectation of privacy and deserving of constitutional protection. We think it is.

A person's pocket is likely to contain trivial articles used in day-to-day living such as small change, matches, a comb, or a handkerchief. However, it is also common for a person to place in his pocket things of great monetary value, such as currency, articles of practical necessity, such as credit cards, licenses, or permits, and treasures of personal significance, such as letters or photographs of family members. If a person were to be handed an article which he intended to keep safe from theft or secure from prying eyes, that person would almost certainly place the article in his pocket. No more reprehensible petty thief can be found than a pickpocket, not because he steals, but because he does so by intruding into an area where his victim most wishes to remain secure. We find that a vest pocket is a protected receptacle of personal effects and may not be searched except as permitted by the Fourth Amendment.

Respondent seeks to justify the search on the basis of the "automobile exception", i.e., that a warrant is not necessary for a lawful search of an automobile so long as probable cause exists. (*Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]; *Carroll* v. *United*

*States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790].) ■ However, it has now been firmly established that both probable cause and exigent circumstances must exist to justify the warrantless search of an automobile. (*Arkansas* v. *Sanders, supra,* 442 U.S. 753; *United States* v. *Chadwick, supra,* 433 U.S. 1.) Once personal effects have been lawfully seized from an automobile and placed within the officer's exclusive authority, an immediate search is not necessary and a warrant must be obtained for its search. (*People* v. *Minjares, supra,* 24 Cal.3d 410.) "It would be anomalous indeed if personal effects not otherwise subject to a warrantless search could be searched simply because they were found in an automobile. Given the omnipresence of automobiles in modern life, such a holding would considerably diminish individual privacy." (*Id.,* at p. 420.)

Moreover, in *People* v. *Dalton, supra,* 24 Cal.3d 850, the court made it clear that when an item is in the exclusive control of an officer, the fact that the item was lawfully seized does not validate the search of the item itself. In *Dalton,* the court noted the following: "Even though no decision had been made as to whether the car should be impounded or towed, the boxes themselves could have been safely transported to the police station. No fears for the officers' safety or threat of destruction of evidence dictated an immediate search. [Citation.] Further, it was midafternoon on a weekday and a magistrate would have been easily accessible...." (*Id.,* at p. 857.) ■ In examining the evidence before us, we find no exigent circumstances that would make appropriate an immediate search of appellant's vest. The officer clearly had the vest in his exclusive possession and control and could have obtained a warrant to permit a later search.

Accordingly, we hold that there was no justification for the officer's warrantless search of the pocket of appellant's vest and the motion to suppress evidence of the contraband found therein should have been granted.

We turn now to the question of the lawfulness of the search of the automobile trunk.

■ It is clear that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 18 [20 L.Ed.2d 889, 903-904, 88 S.Ct. 1868].) In the instant case the officer had probable cause to

search the interior of the automobile but the question arises whether he had probable cause and justification to extend the search to the trunk.

■ *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 568 [128 Cal.Rptr. 641, 547 P.2d 417], held that probable cause to search the interior of an automobile does not necessarily include probable cause to search the trunk. "In such a situation there must be some specific articulable facts which give reasonable cause to believe that seizable items are, in fact, concealed in the trunk. [Citations.]" (*Ibid.*) The court in *Wimberly* followed the decision of this court in *People* v. *Gregg* (1974) 43 Cal.App.3d 137 [117 Cal.Rptr. 496]. Both in *Gregg* and *Wimberly* the amount of marijuana seized in the passenger compartment of the automobile tended to show personal use only and thus there was no indication that there would be further contraband contained in the trunk. (*Wimberly*, at p. 572; *Gregg*, at p. 143.)

In *Gregg*, this court stated: "[I]f a substantial quantity of marijuana is found inside the automobile or on the person of an occupant, it reasonably may be inferred that additional contraband may be concealed in areas of the car not immediately accessible and adjacent to the occupants, such as the trunk or under the hood. A substantial quantity of marijuana in the interior of the car would give rise to a logical inference that the car was being used to transport marijuana." (*Gregg*, at p. 142.) ■ In the present case it is apparent that the marijuana cigarette butts and debris found in the front seat and the very small amount of marijuana found in the flight bag cannot be considered a "substantial" quantity. That which was found did not give rise to a logical inference that the vehicle was being used for the transportation of hidden contraband. To the contrary, the small quantity found is logically consistent with a supply of marijuana for personal use. This does not furnish justification for a warrantless search of the trunk.

Respondent also maintains that justification for searching the trunk may be found in the fact that appellant attempted to avoid being stopped by the officer after he was told over the public address system to follow the patrol car. For this proposition respondent cites *People* v. *Fraijo* (1977) 78 Cal.App.3d 977, 981 [144 Cal.Rptr. 424]. In *Fraijo* the defendant ran a red light and then attempted to avoid apprehension by flight at high speeds. Once stopped, defendant's nervous demeanor led the officers to suspect that he was under the influence of drugs and that contraband was present in the vehicle. However, a search of the passenger compartment revealed nothing. As a result of the foregoing

circumstances *and* the fruitless search of the passenger compartment, "... [t]here ripened a reasonable and strong suspicion that whatever Fraijo was trying to hide was in the trunk of the car." (*Id.*, at p. 982.) Thus, the absence of any visible contraband gave rise to the reasonable suspicion that contraband was hidden in the trunk and the rule that justification for a search of the trunk of a car may be based on not only what is found in the passenger compartment but also what is *not found.*

This case is not consistent with the facts of *Fraijo*. In the instant case there was enough contraband found in the interior of the automobile to explain appellant's attempted flight. Moreover, appellant's personal demeanor and evasive tactics were not nearly as dramatic as those encountered in *Fraijo*. We must therefore conclude that the officer had no basis for a reasonable and strong suspicion that contraband was in the trunk.

We hold that there was no lawful justification for the warrantless search of the trunk of appellant's automobile and that the court below was in error in denying the motion to suppress the evidence found in the trunk.

In view of the conclusions reached in this case, it is not necessary to consider appellant's remaining contentions. A reversal is required. Because the only evidence of appellant's guilt must be suppressed, no retrial is appropriate.

The judgment (order granting probation) is reversed and the trial court is directed to enter an order dismissing with prejudice all charges in the information.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.