[Crim. No. 20183. First Dist., Div. Two. Nov. 26, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM RANDOLPH YUNA, JR., Defendant and Appellant.

COUNSEL

Victor D. Vertner for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney

General, Eugene W. Kaster and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SMITH, J.—This is an appeal from a conviction of possession of methamphetamine and LSD (Health & Saf. Code, § 11377). Appellant contends that the warrantless search of his car as well as a jacket found in its passenger compartment was unlawful. We uphold the search of the car but find that the search of the jacket was invalid because unjustified by any of the exceptions to the warrant requirement.

On April 11, 1978, at 8:20 p.m., a Santa Clara city policeman was patrolling an area of the city with a high incidence of criminal activity when he observed what appeared to him to be a drug transaction. Parked in the lot of a local shopping area, he saw suspicious activity in a Pinto occupied by three men, two seated in front and one in back, which was parked three feet from his patrol car. Noting that the heads of the two men in front were lowered and that their shoulders were moving, the officer concluded that they were "drinking beer, rolling a marijuana cigarette or engaging in other illegal activity." One of the men then turned to hand a dark object to his companion in the back seat and for the first time noticed the patrol car. At this point, the man in the back seat got out of the car and ran toward a nearby bar. When the man sitting in the front passenger seat also got out, the police officer, whose suspicions were aroused, detained him.

While talking to this detained suspect, the officer kept his eye on the individual remaining in the car, who is the appellant herein. He saw him get out of the car, disappear for a moment and then reappear at the left rear of the Pinto. Appellant placed a dark cloth object in the rear seat area and then walked toward the officer. In response to the officer's questions, appellant revealed that he was on parole for forgery and sale of narcotics. He told the officer, "We were just chipping, man," which was understood by the officer to mean that the three men had been smoking marijuana. During this time, appellant appeared nervous and kept looking toward the nearby bar. Nevertheless, the police officer let him go, having decided that he lacked probable cause to make an arrest. Appellant followed his companions into the bar.

His suspicions aroused by appellant's brief disappearance near the Pinto, the officer immediately approached the car, discovering a transparent plastic bag of white powder lying on the pavement against the rear tire. Based upon training and experience, he concluded that the substance was cocaine.

By this time, two backup units had arrived on the scene. While they kept the Pinto under surveillance, the police officer first on the scene searched for appellant and his companion in the nearby bar and liquor store while other officers searched the surrounding area.

Approximately 40 to 45 minutes after appellant's departure and after efforts to find the three men had proved unsuccessful, the police officer decided to search the Pinto for additional contraband. Although the doors were locked, he gained entry through the hatchback which had been left unlocked. On the floor in the rear seat area, he saw a folded Levi jacket which he proceeded to search. In the left breast pocket he found a large plastic bag containing 48 smaller plastic bags of a white powder which proved to be methamphetamine. In the right breast pocket he found another plastic bag which held 14 squares of paper containing a substance later identified as LSD. Marijuana was also discovered in the glove compartment.

Appellant's arrest was effected sometime after that evening. He was originally charged with simple possession and possession for sale of methamphetamine and LSD. After his motion to suppress was denied, he pleaded guilty to the simple possession charges, and the other charges were dismissed. This appeal followed.

■ Appellant maintains that the discovery of cocaine outside the car does not constitute substantial evidence to support the trial court's finding of probable cause to search the interior of the car.

■ Warrantless searches are presumed illegal under the Fourth Amendment, subject to only a few carefully limited exceptions. (*Mincey v. Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408]; *Wimberly v. Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417].) The state has the burden of showing that a warrantless search falls within one of those exceptions. (*McDonald v. United States* (1948) 335 U.S. 451, 456 [93 L.Ed. 153, 158-159, 69 S.Ct. 191]; *Badillo v. Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) ■ Under the "automobile" exception, a

car which is stopped on the highway may be searched without a warrant where there is probable cause to believe it contains contraband or evidence of crime. (*Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790]; see also *Chambers* v. *Maroney* (1970) 399 U.S. 42, 48-49 [26 L.Ed.2d 419, 426-427, 90 S.Ct. 1975].) ██ Probable cause to search exists when an officer is aware of facts which would lead a person of ordinary caution to entertain a strong suspicion that seizable evidence is located in the place to be searched. (*Wimberly* v. *Superior Court, supra*, 16 Cal.3d 557, 571.)

██ Here, we hold there was sufficient evidence to support the trial court's finding on the search of the automobile. At the very least, appellant's disclosure that he and his companions had been smoking marijuana justified a belief that some trace of this substance would be found in the car. The discovery of the cocaine provided additional probable cause. Although the cocaine was deposited outside the car, it presumably had been located in the passenger compartment only a few moments earlier. This properly lead the officer to believe that additional quantities would be found within.

██ Appellant next maintains that even if the warrantless search of the passenger compartment was proper, he had a greater right to privacy in the contents of his jacket which required the procurement of a warrant.

On the other hand, the People seek to justify the search of the jacket on the basis of *Wimberly* v. *Superior Court, supra*, 16 Cal.3d 557, 567, *People* v. *Gregg* (1974) 43 Cal.App.3d 137, 142 [117 Cal.Rptr. 496], *People* v. *Fulk* (1974) 39 Cal.App.3d 851, 853 [114 Cal.Rptr. 567], and *Bethune* v. *Superior Court* (1970) 11 Cal.App.3d 249, 258, footnote 6 [89 Cal.Rptr. 690]. The court in *Bethune* held that the warrantless search of a purse found in a car fell within the scope of the automobile exception; the other cases expressly or impliedly extended the automobile exception to the warrantless search of clothing found in cars.

The beginning point of our analysis of the search of the jacket is not the privacy question urged by the appellant. Rather, we again start with the presumption that warrantless searches are unreasonable, subject to a few carefully circumscribed and jealously guarded exceptions established by case law. This presumption has been applied to the warrantless search of containers in the automobile setting by both the

United States and California Supreme Courts. (*Arkansas* v. *Sanders* (1979) 442 U.S. 753, 759 [61 L.Ed.2d 235, 241-242, 99 S.Ct. 2586]; *People* v. *Dalton* (1979) 24 Cal.3d 850, 855 [157 Cal.Rptr. 497, 598 P.2d 467].)

■ In invalidating the warrantless search of two boxes found in the trunk of a car, the California Supreme Court in *Dalton* stated that "[a] warrantless search of closed containers found within an automobile involves considerations separate from those involved in the warrantless search of the interior of the automobile, and it must be justified by some recognized exception to the warrant requirement." (Pp. 855-856.) *Dalton*, following *Sanders*, clearly limits the scope of the automobile exception. In our case, the People's argument must therefore fail since the cases relied upon by the state were decided long before *Dalton* and *Sanders*.

■ However, the difficult practical question is: Must the police secure a warrant in every "closed container case" regardless of whether it is a suitcase or a paper bag? The emerging case law indicates the test is whether there exists a reasonable expectation of privacy in the container deserving of constitutional protection. (See *People* v. *Fick* (1980) 107 Cal.App.3d 892 [166 Cal.Rptr. 106]; *People* v. *Diaz* (1980) 101 Cal.App.3d 440, 446-448 [161 Cal.Rptr. 645].) The *Sanders* case extended the Fourth Amendment protection to a suitcase because it is the type of container that is "a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." (*People* v. *Sanders, supra*, 442 U.S. 753, 762 [61 L.Ed.2d 235, 244].)

Courts have found this "reasonable expectation of privacy" to exist in luggage (*Arkansas* v. *Sanders, supra*, 442 U.S. 753), a locked footlocker (*United States* v. *Chadwick* (1976) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]), closed boxes (*People* v. *Dalton, supra*, 24 Cal.3d 850), a tote bag (*People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514]), an electric blanket box (*People* v. *Musante* (1980) 102 Cal.App.3d 156, 158-159 [162 Cal.Rptr. 158]), an athletic bag (*Bell* v. *Superior Court* (1980) 101 Cal.App.3d 238 [161 Cal.Rptr. 455], and a lunch box (*People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811]). On the other hand, the requisite expectation of privacy deserving of constitutional protection was found wanting in a lidded soft drink cup (*People* v. *Diaz, supra*, 101 Cal.App.3d at pp. 446-448), a paper bag (*People* v. *Fick, supra*, 107 Cal.App.3d at pp. 895-896), and

a cigarette box (*People* v. *Scott* (1979) 95 Cal.App.3d Supp. 8, 11 [158 Cal.Rptr. 270]).

■ We hold that in the present case there was a reasonable expectation of privacy in appellant's jacket, and therefore no justification for a warrantless search. The vest pocket of a jacket is a typical repository of personal items. Although items of no value and insignificance may be placed in such a pocket, it is also a likely and typical repository of items of identification, of value, and of confidence.

We therefore conclude that the police officer, with the jacket under his exclusive control, should have seized it pending issuance of a search warrant. (See (*People* v. *Minjares, supra*, 24 Cal.3d at p. 423.) His failure to do so compels suppression of the contraband found in its pockets.

The conviction is reversed.

Rouse, Acting P. J., and Miller, J., concurred.

A petition for a rehearing was denied December 24, 1980.