[No. A024237. First Dist., Div. Four. Dec. 19, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERTO SANTOS JUAN, Defendant and Appellant.

**COUNSEL**

Alexander G. van Broek, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Linda Ludlow and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ANDERSON, P. J.**—By an information filed in the City and County of San Francisco Alberto Santos Juan (appellant or Juan) was charged with the crime of robbery, in violation of Penal Code section 211.[1] It was further

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

alleged that Juan personally used a deadly and dangerous weapon, a knife, in the commission of this crime within the meaning of section 12022, subdivision (b). At his arraignment, Juan entered a plea of not guilty.

At the preliminary hearing the victim, Mary Jane Wetherbee, identified the appellant, Alberto Juan, as her assailant. At this time appellant's counsel stipulated that appellant was indeed Alberto Juan and made no objection to the in-court identification by the victim. Pursuant to section 1538.5 Juan moved to suppress evidence and this motion was granted in part and denied in part.

He ultimately pled guilty to robbery and admitted the enhancement for use of a deadly weapon; he was sentenced to state prison for the lower term of two years.

On the morning of March 24, 1982, between 9:15 and 9:30 a.m., San Francisco Police Inspector Mallot received a telephone call from an anonymous informant. Both Inspector Mallot and his partner, Inspector Gamble, were able to listen to the call on separate receivers. The informant stated that two Filipino men in Joe Jung's restaurant were discussing a robbery they had committed against a woman at Columbus and Kearny Streets. The caller reported that the two men possessed a number of the victim's credit cards, which they planned to use, and her passport. The caller further stated that the two Filipino men were departing but had left a "brown jacket with the credit cards and the passport." The informant refused to disclose his identity to the officers.

Immediately after the caller hung up, Inspector Mallot contacted Central Station to ascertain if a robbery had been reported. This phone call was witnessed by Inspector Gamble. Inspector Mallot was informed that a robbery had been reported that morning near Columbus and Kearny Streets and that the victim's name was Wetherbee. Inspector Mallot then called Ms. Wetherbee at her office. She verified that she had made a report and that she had been robbed that morning on her way to work. Ms. Wetherbee told Officer Mallot that before the robbery occurred, she had paused at a newspaper rack near Pacific and Columbus Streets and was getting a newspaper when two men came up behind her and attempted to take a paper without paying for it. She closed the newspaper rack before the men were able to obtain a copy and they became angry. After walking a few blocks she was attacked by two men. One of her assailants put a knife at the middle portion of her throat and demanded her purse and wristwatch. She pleaded to keep her Benrus watch for sentimental reasons but the attackers "snatched" it off her wrist, breaking the band, and grabbed her purse.

Among the items Ms. Wetherbee reported missing were her passport, numerous credit cards, a checkbook, a Benrus watch and miscellaneous other personal property. During Inspector Mallot's telephone conversation with Ms. Wetherbee, Inspector Gamble was seated in the same room and heard his partner ask the victim questions, repeat some of her answers and observed him taking notes of the conversation. Inspector Gamble remembered seeing Mallot write down the words "credit cards," "TWA," "checkbook" and "watch."

After completing the conversation with Ms. Wetherbee, the two officers went to Joe Jung's restaurant. There the officers observed a brown jacket draped over a chair at an empty table. On the floor, directly beneath the chair, they noticed a United States passport. Inspector Gamble then bent down to find whose name appeared on the passport. He observed it was in the name of Mary Jane Wetherbee. Upon discovering this information the inspectors picked up the brown jacket and found credit cards in the name of the victim. The officers returned the jacket to its former position and took possession of the credit cards and passport. They retired to a table further back in the restaurant in order to watch the jacket.

At approximately 11:15 a.m., the appellant and another man entered the restaurant, went directly to the table and chair where the brown jacket was situated, picked up the jacket and began to search through its pockets. At this time the inspectors walked up to the two men and placed them under arrest for robbery. Inspector Gamble then searched Mr. Juan's person and found in his pocket a lady's Benrus watch with the band broken. Credit cards in the name of Mary Jane Wetherbee were also discovered on Mr. Juan's person.

I

Appellant contends that "[t]he trial judge erred in failing to suppress all evidence resulting from the unlawful search of the jacket." At the suppression hearing appellant moved to exclude all evidence from the search at the restaurant, including the evidence obtained during the search of his person. Appellant argues that the warrantless search of defendant's jacket, which at the time of the seizure was lying at an empty table in a restaurant, constitutes a violation of the Fourth Amendment of the United States Constitution and article I, section 13, of the California Constitution.

Before we subject the state's conduct to Fourth Amendment scrutiny, we must first consider the threshold question of whether this constitutional provision applies in the present case. The crucial issue to be resolved is whether the appellant had a "reasonable expectation of privacy" with regard to his

jacket. In the landmark case of *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], the United States Supreme Court held: "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [Citations.]" (At pp. 351-352 [19 L.Ed.2d at p. 582].) The standard is whether the person has demonstrated a subjective expectation of privacy which is objectively reasonable and whether that expectation has been violated by unreasonable governmental intrusion. (*Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421, 425 [158 Cal.Rptr. 86].) Without a reasonable privacy expectation, the defendant cannot convincingly argue that a warrantless intrusion constitutes a "search" that is subject to constitutional challenge. (*People* v. *Diaz* (1980) 101 Cal.App.3d 440, 447 [161 Cal.Rptr. 645].)

 Relying on *People* v. *Yuna* (1980) 112 Cal.App.3d 634 [169 Cal.Rptr. 424] and *People* v. *George* (1980) 110 Cal.App.3d 528 [168 Cal.Rptr. 44], appellant argues that an expectation of privacy is intrinsic to an article of clothing such as a jacket. Both *Yuna* and *George* involved searches of a jacket and vest pocket, respectively, inside automobiles under circumstances where there was probable cause to believe that contraband was being transported in those vehicles. These cases cannot accurately be compared to the situation at hand which involved a search conducted in a public restaurant. Moreover, both *Yuna* and *George* were decided before *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157] and are no longer controlling. Under *United States* v. *Ross* and *People* v. *Chavers* (1983) 33 Cal.3d 462, 466 [189 Cal.Rptr. 169, 658 P.2d 96], the police may lawfully conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may contain the object of the search.[2]

No California case law on the subject of the warrantless search of an article of clothing in a public place exists. We find highly persuasive *United States* v. *Alewelt* (7th Cir. 1976) 532 F.2d 1165, cert. denied 429 U.S. 840 [50 L.Ed.2d 109, 97 S.Ct. 114], which examined a situation and issue strikingly similar to the case at bar. In *Alewelt,* the FBI received information that a man fitting defendant's description and wearing a "brown leather Air Force-type jacket" and "white cloth cap" had robbed a bank. On the day of the robbery the investigators went to the office of defendant's mother at the Department of Public Health. They found the office door open and dis-

---

[2]But for searches conducted before passage of Proposition 8, note our Supreme Court's reliance on the California Constitution precluding without a warrant search of a briefcase in the trunk of a vehicle which was stopped lawfully and searched based upon probable cause. (*People* v. *Ruggles* (1985) 39 Cal.3d 1 [216 Cal.Rptr. 88, 702 P.2d 170].)

covered on a coat rack "a brown leather Air Force-type jacket. In the jacket pocket, and apparently clearly visible, were a white cloth cap and several bundles of money in wrappers." (At p. 1167.) The agents then seized the jacket and its contents.

On appeal, the defendant contended that he had a reasonable expectation of privacy with regard to his jacket and thus the agents' warrantless seizure should be subject to Fourth Amendment protection. The court rejected this assertion: "[B]y placing the jacket on a coat rack in the general working area of an outer office where he had no possessory interest, the defendant relinquished that degree of control, and reasonable expectation of privacy, necessary to sustain a challenge to the legality of the subsequent search and seizure on Fourth Amendment grounds. *Katz* v. *United States*, 389 U.S. 347 []." (*United States* v. *Alewelt, supra*, 532 F.2d at p. 1168.)

Just as defendant Alewelt had no reasonable expectation of privacy with regard to his jacket hung on a coatrack in an office open to the public, Juan had no reasonable expectation of privacy with regard to his jacket left draped over a chair at an empty table in a restaurant open to the public. An individual who places a jacket at an empty table in a restaurant must reasonably expect that the coat will be touched or handled by either an employee or by a member of the public who wishes to clean up or sit at the table. Indeed, an individual who leaves behind an article of clothing at a public place most likely *hopes* that some Good Samaritan will pick up the garment and search for identification in order to return it to the rightful owner. By leaving his jacket unattended in the restaurant, Juan exposed it to the public and he cannot assert that he possessed a reasonable expectation of privacy in the pockets of his jacket. The "search" of Juan's jacket was therefore lawful since it did not violate his constitutional rights.

II*

. . . . . . . . . . . . . . . . . . . . . . . .

III†

. . . . . . . . . . . . . . . . . . . . . . . .

---

*Part II of this opinion is not certified for publication. (See fn., *ante*, at p. 1064.)

†Part III of this opinion is not certified for publication. (See fn., *ante*, at p. 1064.)

The judgment is affirmed.

Poché, J., and Sabraw, J., concurred.

A petition for a rehearing was denied January 17, 1986, and appellant's petition for review by the Supreme Court was denied March 13, 1986.