Filed 3/16/15  P. v. Santiago CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANGEL JUAN SANTIAGO,<br><br>    Defendant and Appellant. | F068449<br><br>(Super. Ct. No. CRM026379)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hansen, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Detjen, J. and Smith, J.

Appellant Angel Juan Santiago pled no contest to being a felon in possession of a firearm (count 1/Pen. Code, § 29800, subd. (a)(1)) and possession of methamphetamine while armed with a loaded, operable firearm (count 4/Health & Saf. Code, § 11370.1, subd. (a)) and he admitted allegations that he had a prior conviction within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

On November 20, 2013, the court sentenced Santiago to an aggregate four-year prison term, the mitigated term of two years on count 4, doubled to four years because of Santiago's prior strike conviction, and a stayed term on count 1.

On appeal, Santiago contends the court erred when it denied his motion to suppress. We affirm.

## FACTS

On February 2, 2013, Santiago was involved in an auto accident and left the scene without identifying himself. Atwater police officers located Santiago and arrested him after finding a loaded revolver, digital scales, and two baggies containing methamphetamine in a jacket Santiago dropped on the ground.

On August 9, 2013, Santiago filed a suppression motion, contending the search of his jacket containing the contraband was the product of an unlawful detention.

On August 20, 2013, at a hearing on the suppression motion, Atwater Police Officer Matthew Vierra testified that on February 2, 2013, at approximately 7:09 p.m., he responded to a call regarding a traffic collision on Willow Street and Mitchell Avenue and spoke with Maria Benitez. Benitez told the officer she was driving westbound on Mitchell when she turned left (south) onto Willow and collided with a vehicle that was traveling eastbound on Mitchell. After the collision both vehicles pulled off to the side. After she and the other driver, who was eventually identified as Santiago, got out of their cars, Santiago told Benitez, "You don't have to call the police, I don't have a driver's license." Santiago did, however, provide Benitez with a registration and insurance

2.

information for the vehicle he was driving.[1]  Benitez nevertheless told Santiago she was going to call the police.  Santiago then got something out of the trunk of his car and walked away south on Willow Street.  Benitez described Santiago as an adult Hispanic male with a shaved head, who was wearing blue jeans and a jacket.

Timothy Cardona, Benitez's boyfriend, heard the accident from inside a nearby residence and immediately went outside.  Officer Armando Echevarria testified that upon arriving at the scene he spoke with Cardona, who informed him that Santiago provided the registration and insurance information for his car.  When Santiago learned that the police had been summoned, Santiago retrieved something from the trunk of his car, stated he would return, and walked away south down Willow Street.  Additionally, Officer Vierra told Echevarria that Benitez reported that Santiago had stated to her that he was unlicensed.

Echevarria then drove south on Willow Street to see if he could locate Santiago to bring him back to the scene because he did not know if he was licensed or whether he had been injured.  At Olive Avenue, Echevarria turned around and began driving back to the scene of the accident.  On the way, he saw Santiago, who matched the description given by Benitez, on the west side of the street walking south in a horizontal direction across the front yard of a residence in the 1300 block of Willow.  Echevarria called out to Santiago, "Hey, buddy," and Santiago looked at him.  The officer got out of his patrol car and again called out to Santiago.  At that point, Santiago had walked to the front of a vehicle parked in a driveway on the south side of the residence.  After acknowledging Echevarria, Santiago removed his jacket in a slow, deliberate manner, let it fall to the ground, and walked toward the officer.  Echevarria met Santiago by the trunk of the

---

**1**     The registration and insurance information Santiago provided were both in the name of Nicole Renee Gutierrez.

3.

parked vehicle and asked him if he was involved in the accident.  Santiago replied that he was and that he was on his way back to the scene.

Officer Loren Mann arrived at Echevarria's location and stood by Santiago while Echevarria walked to where Santiago dropped the jacket.  Echevarria testified that immediately upon looking at the ground he saw the butt of a revolver protruding from one of the jacket's pockets.  Echevarria then asked Mann to handcuff Santiago.  Echevarria picked up the jacket, walked it over to his patrol car, and removed the contents from the jacket pocket.  In addition to a loaded .38-caliber revolver, Echevarria found a digital scale and a plastic bag containing two separate baggies with a crystalline substance inside that he believed was methamphetamine.

On October 9, 2013, the court denied Santiago's suppression motion.  In so doing, the court found that the gun handle had not been sticking out of a jacket pocket.

## DISCUSSION

### *The Detention*

Santiago contends he was unlawfully detained because the officers did not have a reasonable suspicion that he was involved in criminal activity when they detained him.  He further contends that he did not abandon the jacket when he let it drop on the ground.  Thus, according to Santiago, the court erred when it denied his motion to suppress.  We will reject these contentions.

"'An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles.  [Citations.]  [¶]  In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated.  [Citations.]  "The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review."  [Citations.]  [¶]  The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard.  [Citations.]  Its decision on the second, which

4.

is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, … is also subject to independent review.' [Citation.]" (*People v. Alvarez* (1996) 14 Cal.4th 155, 182.)

"An investigative detention is justified when the facts and circumstances known or apparent to the officer, including specific and articulable facts, cause him to suspect (1) a crime has occurred and (2) the person he intends to detain is involved in the criminal activity. [Citation.]" (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 381.)

Santiago was involved in an accident and walked away from the scene without providing his name and address to Benitez as required by Vehicle Code section 20002.[2] Additionally, before leaving the scene, Santiago admitted to Benitez that he did not have a driver's license, which constituted a misdemeanor violation of Vehicle Code section 12500[3] (Veh. Code, § 40000.11, subd. (b)) and also raised the likelihood that he was operating his vehicle while his driving privilege had been suspended, in violation of

---

[2]     Vehicle Code section 20002 provides:

"(a)  The driver of any vehicle involved in an accident resulting only in damage to any property, including vehicles, shall immediately stop the vehicle at the nearest location that will not impede traffic or otherwise jeopardize the safety of other motorists.…  The driver shall also immediately do either of the following:

"(1)  Locate and *notify the owner or person in charge of that property of the name and address of the driver* and owner of the vehicle involved and, upon locating the driver of any other vehicle involved or the owner or person in charge of any damaged property, upon being requested, present his or her driver's license, and vehicle registration, to the other driver, property owner, or person in charge of that property.…

"(2)  Leave in a conspicuous place on the vehicle or other property damaged a written notice *giving the name and address of the driver* and of the owner of the vehicle involved and a statement of the circumstances thereof .…  [¶] … [¶]

"(c)  Any person failing to comply with all the requirements of this section is guilty of a misdemeanor .…"  (Italics added.)

[3]     "A person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code .…"  (Veh. Code § 12500, subd. (a).)

Vehicle Code section 14601.1. Additionally, Santiago's flight from the scene of the accident also raised the possibility that he fled because the use of alcohol or drugs by Santiago contributed to the cause of the accident. Thus, Officer Echevarria had a reasonable basis for believing that Santiago might be involved in criminal activity that justified Echevarria detaining him.

Santiago contends Echevarria did not have a reasonable basis to detain him because Benitez hit him and caused the accident, he provided some information to Benitez, he left his car safely parked on the side of the road, Benitez told the officers only that he told her that he did not have a license, and he informed others at the scene that he would return. However, Santiago did not provide Benitez with his name or address as required by Vehicle Code section 20002 and that section does not make compliance with its provisions dependent on who caused the accident. Further, Santiago admitted to Benitez that he committed a misdemeanor violation of driving without a valid driver's license. Moreover, Santiago leaving his car safely on the side of the road and stating that he would return did not divest the officers of reasonable suspicion to detain him to investigate whether he violated the code sections noted above or to determine whether he was hurt in the accident or whether he was under the influence of drugs or alcohol. Thus, we conclude that the officers lawfully detained Santiago.

### The Seizure of the Revolver from Santiago's Jacket

Santiago contends he merely removed his jacket, leaving it momentarily unattended in the front yard of the residence where Echevarria contacted him before he approached the officer. Thus, according to Santiago, there were no objective manifestations that he intended to abandon the jacket and its contents. Santiago is wrong.

"[A] search and seizure of abandoned property is not unlawful because no one has a reasonable expectation of privacy in property that has been abandoned. The question whether property is abandoned is an issue of fact, and the court's finding must be upheld

6.

if supported by substantial evidence. [Citation.]" (*People v. Daggs* (2005) 133 Cal.App.4th 361, 365 (*Daggs*).)

"[*P*]*roperty is abandoned when a defendant voluntarily discards it in the face of police observation, or imminent lawful detention or arrest, to avoid incrimination*." (*Daggs*, *supra*, 133 Cal.App.4th at p. 365, italics added.) Abandonment can occur even if the defendant does not intend to permanently relinquish control over the object. (*In re Baraka H*. (1992) 6 Cal.App.4th 1039, 1048.) "[T]he intent to abandon is determined by objective factors, not the defendant's subjective intent. '"Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other *objective* facts. [Citations.] Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search."' [Citations.]" (*Daggs*, *supra*, at pp. 365–366.) For example, in *People v. Brown* (1990) 216 Cal.App.3d 1442, the court held that the defendant's act of "dropping [a] bag before making a last-ditch effort to evade the police" supported the factual finding that the defendant abandoned the paper bag and lost any reasonable expectation of privacy in its contents. (*Id*. at p. 1451.)

Here, Santiago was in front of a car parked in the driveway of a residence that Santiago had no apparent connection to when Echevarria called out to him. Santiago responded by removing his jacket and letting it fall to the ground as he walked toward the officer. Although there is no evidence that Santiago intended to permanently relinquish control over the jacket, it is clear from the evidence Santiago "discard[ed] it in the face of police observation, or imminent lawful detention or arrest, to avoid incrimination." (*Daggs*, *supra*, 133 Cal.App.4th at p. 365.) Additionally, by dropping the jacket on the ground in a place where it was visible and accessible to passersby, Santiago relinquished any expectation of privacy in the jacket. (Cf. *People v. Juan* (1985) 175 Cal.App.3d 1064, 1069 (*Juan*) [defendant who left jacket containing contraband draped over chair in

7.

restaurant did not have a reasonable expectation of privacy in jacket]; *People v. Baraka H.*, *supra*, 6 Cal.App.4th at pp. 1045–1048 [defendant did not have expectation of privacy in crumpled bag that held narcotics he was selling when he kept the bag nearby on the ground, but out of reach "for the manifest purpose of maintaining 'deniability' as to the bag and its contents in the event of the arrival of law enforcement officers"]; *People v. Roybal* (1998) 19 Cal.4th 481, 502, 507–508 [defendant abandoned plastic bag containing stolen jewelry that he placed in cinder block of wall on mother's property that was visible and accessible to any passersby].)  As noted by the court in *Juan*, "By leaving his jacket unattended in the restaurant, [the defendant] exposed it to the public and he cannot assert that he possessed a reasonable expectation of privacy in the pockets of his jacket." (*Juan*, *supra*, at p, 1069.)

Santiago cites *Smith v. Ohio* (1990) 494 U.S. 541 (*Smith*), *Rios v. United States* (1960) 364 U.S. 253 (*Rios*), and *People v. Baker* (2008) 164 Cal.App.4th 1152 (*Baker*) in support of his contention that he did not abandon his jacket here.  These cases are inapposite.

In *Smith*, the United States Supreme Court concluded that the defendant had not abandoned a bag containing drug paraphernalia when he placed the bag next to him on the hood of his car as a police officer approached him.  (*Smith*, *supra*, 494 U.S. at p. 541.) *Smith* is easily distinguishable because the defendant there maintained possession of the bag, there was nothing about his conduct that indicated he intended to abandon the bag, and his conduct did not expose the bag to public scrutiny.

In *Rios*, in concluding that for Fourth Amendment purposes a passenger in a taxi had not abandoned a package that he let drop to the floor, the United States Supreme Court stated, "A passenger who lets a package drop to the floor of the taxicab in which he is riding can hardly be said to have 'abandoned' it.  An occupied taxi is not to be compared to an open field, [citation] .…" (*Rios*, *supra*, 364 U.S. at p. 262, fn. 6.)  *Rios* is easily distinguishable because a passenger who drops a package to the floor of a taxi has

not done anything that manifests an intention to divest himself of any interest in the package, the passenger still maintains control over the package, and dropping it to the floor of the taxi does not expose the package to public scrutiny. Thus, in that situation, there also was no objective basis for inferring that the passenger abandoned the package.

In *Baker*, after stopping a car driven by a parolee for speeding, an officer decided to conduct a search of the car pursuant to the terms of the driver's parole. The defendant, a woman, was seated in the front seat with a purse at her feet and was asked to get out of the car so the officer could conduct the search. The defendant exited the car without taking the purse or asserting ownership. Although a search of the car yielded nothing, a search of the purse uncovered a folded tinfoil packet containing a small amount of methamphetamine. (*Baker*, *supra*, 164 Cal.App.4th at p. 1156.) In finding that the defendant had not abandoned the purse for search and seizure purposes, this court concluded, "Simply getting out of the car and leaving the purse on the floorboard does not constitute abandonment." (*Id*. at p. 1161.)

*Baker* is not controlling because the defendant's conduct did not evince an intent to disclaim an ownership interest in the purse and she did not leave the purse open to public scrutiny. Here, as noted earlier, Santiago evinced an intent to abandon the jacket containing the contraband by dropping it on the ground in a futile attempt to disassociate himself from the jacket. Further, by leaving the jacket on the ground in a place where it was visible and accessible to passersby, Santiago relinquished a reasonable expectation of privacy in the jacket because he should have realized that it was likely to be examined by curious passersby. Additionally, the cases cited by Santiago are easily distinguishable because in none of them did the defendants discard the items at issue "in the face of police observation, or imminent lawful detention or arrest, to avoid incrimination." (*Daggs*, *supra*, 133 Cal.App.4th at p. 365.) Accordingly we conclude that the court did not err when it denied Baker's motion to suppress.

## <u>DISPOSITION</u>

The judgment is affirmed.